WILES, Plaintiff in Error, v. MADDOX, Defendant in Error.

1. An execution, issued under a judgment against one of two partners, may be levied upon his entire interest in the partnership effects or upon his interest in any portion of such effects.
2. In levying such an execution upon partnership property, the sheriff may seize and take into his possession a portion or the whole of the partnership effects, and, it would seem, may give possession to the purchaser thereof at the execution sale. (RICHARDSON, Judge, dissenting, holding that such an execution can be levied only upon the debtor partner's entire interest in the partnership property and not upon his interest in a portion thereof; that in executing the writ the sheriff can not take the partnership property levied

6—VOL. XXVI.

upon from the possession of the solvent partner and surrender it to the purchaser at the execution sale.

3. The purchaser at such sale acquires only the interest of the debtor partner in the partnership effects sold.

4. An execution, issued under a judgment against one of several partners, will be a lien on such partner's interest from the time of its delivery to the sheriff.

*Error to St. Louis Court of Common Pleas.*

This was an action instituted by Peter Wiles against Turner Maddox, sheriff of St. Louis county, to recover possession of two mules alleged to have been wrongfully seized and taken away by the defendant. A delivery bond was given in behalf of defendant. The answer traversed plaintiff's ownership, and alleged that defendant, as sheriff, seized and sold said mules as the property of D. J. & N. Childs, jr., in obedience to the command of several executions in his hands against said D. J. & N. Childs, jr.

At the trial the plaintiff proved that on and prior to the 25th day of January, 1856, he was in possession of the mules, claiming to have bought them of D. J. Childs on the 19th day of January, 1856, and that on said 25th day of January, 1856, the defendant seized them under an execution, took them away and sold them. Plaintiff also proved the value of the mules and of their hire, and rested.

The defendant then offered in evidence the record of a judgment in the case of Meegan v. D. J. & N. Childs, jr., et al., rendered October 31, 1855, and also an execution issued thereon dated November 2, 1855, with the defendant's return thereof. The return showed that the mules were levied on and sold under that writ and twelve others, and that the proceeds of the sale were applied towards their satisfaction. To the reading of this record and execution the plaintiff objected. The objection was overruled. The defendant then offered in evidence the remainder of the executions mentioned in his answer. The court excluded them. Some of these executions were placed in the hands of the sheriff before the 19th of January, 1856; some after that date. Defendant then

proved that the mules belonged to the firm of D. J. & N. Childs, jr., in the month of January, 1856. On the cross-examination of a witness, plaintiff offered to prove by him that on the 30th day of October, 1855, and ever since that time, the partnership property of D. J. & N. Childs, jr., was not, and has not since been sufficient, to pay the partnership debts of said firm. The court, on the objection of defendant, excluded this testimony.

The plaintiff, in rebuttal, read the record, dated January 3, 1856, in the case of Meegan v. D. J. & N. Childs, jr., et al., as follows: "By consent of parties, it is ordered that the judgment rendered herein, in October 31, 1855, be set aside as to the defendant Dominick J. Childs, and that this cause be dismissed as to the said Dominick J. Childs." Plaintiff also offered to prove, by defendant himself, that at the date of the levy by him he knew that said judgment had been set aside as to Dominick J. Childs. The court excluded the testimony. Plaintiff also proved, by Dominick J. Childs, that on the 19th day of January, 1856, he, as one of the firm of D. J. & N. Childs, jr., sold and delivered the mules to plaintiff; that this sale was made for partnership use; that the consideration paid by plaintiff for said mules was four hundred and fifty dollars.

The court, of its own motion, gave the following instructions: "7. If the jury believe from the evidence that the clerk of this court on the 2d day of November, 1855, issued the execution read in evidence by the defendant in favor of James Meegan and against Nathaniel Childs, jr., and others; that said executions were received by said defendant as sheriff of St. Louis county on said day and year; that the mules in dispute were owned at said time by Dominick J. Childs and Nathaniel Childs, jr., as copartners, doing business under the name and style of D. J. & N. Childs, jr.; that the defendant, as sheriff as aforesaid, on the 25th of January, 1856, levied upon the said mules as the property of said Nathaniel Childs, jr., to satisfy the said executions; that when this suit was commenced said mules were in the possession of said de-

fendant as sheriff as aforesaid under said levy, and that at said time the said executions remained in the hands of the said sheriff unsatisfied, then the jury will find for the defendant, if the plaintiff's title was acquired by purchase from said copartners or either of them subsequent to said November 2d.

8. If the mules in controversy were the property, on the 2d day of November, 1855, of the partnership of D. J. & N. Childs, jr., then under the judgment and execution issued thereupon there was a lien upon the mules to the extent of the interest of Nathaniel Childs, jr., if he was a member of said firm, from the time said execution came to the hands of the sheriff; and if the defendant as sheriff subsequently levied upon and took possession of said mules under said execution, then the plaintiff can not recover in this action, under the evidence, if he purchased said mules from Dominick J. Childs, the other member of the firm, or from the firm itself, subsequently to the time said execution came into the hands of the sheriff."

The plaintiff thereupon took a nonsuit with leave to move to set the same aside.

*Krum & Harding*, for plaintiff in error.

I. The court erred in refusing the third, fourth and fifth instructions asked by plaintiff, and in giving, on its motion, those marked seven and eight. Even if it be admitted that a separate execution may be levied on partnership effects, yet it does not follow that the execution is a lien on such property before levy and after the writ has been placed in the hands of the officer. The doctrine laid down by the court below would make it impossible for one partner to give valid title to personal property sold and delivered, if there happened to be in the hands of the sheriff an execution against his co-partner. (1 Mart. & Yerg. 309 ; 7 N. H. 352; 4 Dev. 367 ; 8 N. H. 238 ; 13 Conn. 461.)

II. The court erred in excluding testimony offered by plaintiff and in admitting testimony offered by defendant.

*Cline & Jamison*, for defendant in error.

I. The sheriff under an execution against one partner for his separate debt may seize the tangible property of the partnership, and when he does so he acquires a special property in the goods seized. (Coll. on Part. § 821, 822; Story on Part. § 261, 2, 3, 311; 2 Johns. Ch. 548; 20 Maine, 89; 1 Gall. 367.) The execution was a lien on the personal property of all the defendants from the time the same was delivered to the sheriff. (R. C. 1845, tit. Execution, § 16.) The execution under which the sheriff levied upon the mules was against both partners, and issued upon a judgment against both and for a firm debt, and the same being regular upon its face and issued by a court having jurisdiction over the subject matter justified the sheriff in levying upon the said mules. (Higdon v. Conway, 12 Mo. 294.) A sheriff may justify by pleading the execution without showing the judgment. (1 Mo. 246, 94; 4 Mo. 2; 6 Mo. 148; 6 Johns. 196; 3 A. K. Marsh. 452; 19 Mo. 319.) It is not the judgment but the execution which creates the lien on personal property. The plaintiff showed no title in himself. He claimed to have purchased the mules from one partner while the execution was in the hands of the sheriff, and there was no evidence showing or tending to show the consent of the other partner to such pretended sale, which was essential to vest title in the plaintiff; for their copartnership business consisted, not in buying and selling mules, but in sawing and dealing in lumber.

NAPTON, Judge, delivered the opinion of the court.

This action can not, in our opinion, be maintained. It is an action of replevin against the sheriff for levying an execution against N. Childs, jr., upon the partnership property of D. J. & N. Childs, jr. In law the right to levy an execution against one of two partners upon the partnership effects is recognized with great uniformity both in England and in this country. In New Hampshire a different opinion has prevailed, and there may be cases elsewhere in which the principle has been modified or denied; but in England the common law

courts have constantly maintained the right to levy in such cases, and the current of authorities here is in the same direction.

Whether a court of equity or a court of law would interfere, under the circumstances of this case, and stay the proceedings of the sheriff, is a question the decision of which can not vary his liability in action of trespass, trover or replevin, where no such interference has taken place or been solicited. It is agreed, on all sides, that it is only the interest of the debtor partner which is levied on and sold, and this is his share of the effects after payment of the partnership debts. But the sheriff levies on and seizes and takes into possession the partnership effects or so much of them as may be necessary to satisfy the execution. The proceeds go to the creditor, the plaintiff in the execution, and the purchaser acquires the interest of the debtor partner, the defendant in the execution, whatever that may be. If the partnership is insolvent this interest is, of course, of no value, since the partnership debts have a priority ; but the sheriff, even in such cases, is protected in his obedience to the commands of the writ, and is not under the necessity of investigating the condition of the concern prior to his levy. It is for the solvent partner, or, in cases of bankruptcy or insolvency, for the assignees or creditors, to institute such proceedings for the protection of their interests as the law and the nature of their case may afford. It is intimated in some of the cases that where the firm is bankrupt or insolvent, or partnership rights have been transferred to assignees for creditors, the court of law from which the execution emanated may grant equitable relief by controlling its process ; but this is denied by other authorities, and a court of equity is alone held competent to furnish relief. However this may be, it is unnecessary to determine here, since no such application has been made either in law or equity, and the sheriff is sought to be held liable as a mere trespasser.

Principles of public policy, apart from the mere weight of authority, would in our judgment lead to the same result.

Wiles v. Maddox.

The right to an execution in such cases carries with it a moral effect highly important to the interest of the community. It will generally lead to an equitable adjustment of the debt.in cases where the partnership is solvent and an interruption in their business would not be desirable. In other cases the property had as well be in the hands of the sheriff, or the purchaser at the execution sale, as in the possession of the insolvent partners, so far as partnership creditors are concerned. Inconveniences may no doubt arise in isolated cases, and perhaps hardships upon solvent partners; but even then these inconveniences and hardships will scarcely counterbalance those which must ensue from a different doctrine. If the creditor of one partner, whatever the amount of the debt may be, has to initiate proceedings, either at law or equity, to ascertain the exact interest of his debtor in the concern after an adjustment of all the partnership accounts, before he can have his execution levied, it would look very much like giving property so situated a privilege which no other possesses, and exempting it for an indefinite period from the process of the law. The cases on this subject are very fully reviewed by Judge Cowen, in Phillips & others v. Cook, 24 Wend. 389, and may also be found in the notes to 1 Amer. Lead. Cases, 323.

So far as the lien of the execution is concerned we see nothing to distinguish this from any other class of executions. As the writ was in the hands of the sheriff before the transfer to the plaintiff, it was a lien upon the interest of N. Childs in the property, and the title acquired from D. J. Childs was subject to that lien.

It does not seem material to determine the validity of the deed of trust to Alton Long, which the defendant offered in evidence. Although this deed, if valid, might show that the defendant had no right to levy on the property, it would also show that the plaintiff had no right of action, since it was made before his purchase from D. J. Childs.

Judge Scott concurring, the judgment is affirmed.

RICHARDSON, Judge, dissenting. I can not assent to the doctrine that the sheriff, under an execution against one partner for his individual debt, can seize the goods of the partnership so as to sever the possession from the other partners and deliver it to an execution vendee.

Partnership property is the primary fund for the payment of partnership debts, and one partner has no share in the partnership property except what remains after the payment of all debts and liabilities of the firm, and each partner has the right to have the partnership property applied to the payment of the joint debts before any one of the partners or his vendee or individual creditor can claim any right thereto. Neither partner has a separate interest in any part of the property belonging to the partnership, though each has an undivided joint interest in the whole; but this interest is not in any particular portion separate from the mass. The right of one partner to the possession of the whole is to hold for the benefit of the firm, and he has no right to sever any specific portion and hold it for his own use or to the exclusion of the other partners. On what principle then can the sheriff, by an execution against one partner for his private debt, take partnership property from the possession of the solvent partners and transfer it to the purchaser at the execution sale, and thus clothe him with rights superior to those which the debtor partner could assert, and place him in a better position than the partner himself? It is conceded in the opinion of a majority of the court that the purchaser only acquires the share of the debtor partner after the payment of the partnership liabilities, which may or may not be of any value. Then why take the possession from the solvent partners, who are not in default, who are entitled to administer the firm assets for the payment of the joint debts, and who have not only their own interest in the property, which should secure them the possession of it, but a lien in equity on the debtor partner's interest, and on the whole stock for whatever the concern may owe them on a final account? The exercise of the power claimed for an execution against one partner will

Wiles v. Maddox.

often be at the expense of the ruin of the others. For the right to seize the whole stock and remove it to the sheriff's sale room is not controlled by the extent of the debtor partner's interest in the whole, but by the amount of the execution; and though the sheriff sells only the insolvent partner's interest, it is said that he may sell in parcels to different purchasers and deliver possession of each lot as sold. If then an execution is issued against one partner who has a small interest in a large establishment, and the sheriff may seize and take away from the other partners the whole stock and sell it in parcels—a paper of needles to one, a bolt of cloth to another, and so on until the whole stock is sold and distributed to a thousand purchasers, who may be insolvent and reside in different parts of the country—although the purchasers only take the interests of the debtor partner, they get the possession of the property, and it would be poor comfort to the other partners, after they are ruined, to tell them that they may institute proceedings in equity against the various purchasers and restrain them from disposing of the property until the partnership affairs are settled and the interest ascertained which they had acquired. The "moral effect" which an execution armed with such dangerous power carries, is to bankrupt the solvent partners, or compel them, at the risk of being ruined, to pay the debt of their insolvent partner. This cruel remedy is not necessary to prevent a debtor from placing his means in a partnership and defying his creditors, because the law furnishes a remedy consistent with the just rights of creditors and of the other partners.

Cases may be found in the books on both sides of this question, and the opinion of the court is abundantly sustained by authorities; but I think the doctrine, which is most just and consistent with reason, policy and the rights of all concerned, is, that the sheriff only sells the undivided and unascertained contingent interest of the debtor partner, and not in any specific part of the partnership property, but only his contingent interest in the stock and profits, which will be ascertained after the settlement of the partnership accounts and the pay-

ment of the partnership debts. The levy should be made of the debtor's interest in the whole stock, and the sheriff should not take away any specific part of the partnership goods, nor the whole, because the other partners have property in every part as well as the whole. The sale will operate as a dissolution of the partnership, and the vendee will become a tenant in common with the other partners substituted to the rights of the judgment debtor. The sale will carry the debtor's unascertained contingent interest, whatever it may be; but it will not give the vendee any right to a division or separate possession, though it will give a right to call for an account and thus entitle himself to the interest of the debtor partner, which will be ascertained on a settlement of the partnership affairs. The purchaser, taking in right of the debtor partner, will take nothing more than an intangible interest, which can not be made available until the surplus is ascertained by an account. (Morrison v. Blodgett, 8 New Hamp. 238; Sitler v. Walker, Freem., Miss., 77; Deal v. Bogue, 20 Penn. State 228.) "The sheriff can sell only the actual interest which such partner has in the partnership property after the accounts are settled, or subject to the partnership debts. The separate creditor takes it in the same manner as the debtor himself had it and subject to the rights of the other partners. The sheriff therefore does not seize the partnership effects themselves, for the other partner has a right to retain them for the payment of the partnership debts." (In the matter of Smith, 16 Johns. 106.) "The purchaser takes it in the same manner as the debtor has it and subject to the rights of the other partner, who has a right to retain the possession of the partnership effects for the payment of the partnership debts. The sheriff, therefore, sells the mere right and title to the partnership property, but does not deliver possession." (Crane v. French, 1 Wend. 313.) "The sheriff could only sell the interest of Goulding in the partnership property, but neither the sheriff nor the purchaser would have any right to the possession of the property. The other partner would have the right to re-

tain possession till the partnership debts were paid." (Dunham v. Murdock, 2 Wend. 554.)

In my opinion, the execution against N. Childs did not operate as a lien on the property of D. J. Childs and N. Childs, so as to prevent the other partner from selling it; and the plaintiff, having purchased the mules from D. J. Childs before the levy, acquired a title which could not be defeated by a subsequent levy and sale under the execution against the other partner, and I am therefore in favor of reversing the judgment.