# WHEELING.

## MAXWELL, CAMPBELL & TINGLE v. THE CITY OF WHEELING, et al.

### July 21, 1876.

1876.
June Term.

Maier & McKinley, partners, own, as such, in equal parts, a wharf-boat and a grocery store in the city of Wheeling; Maier executes a trust deed, by which he conveys to A. J. Sweeney, "all his undivided half of the wharf-boat and boat-store, in the city of Wheeling, and which is owned by the firm of Maier & McKinley;" and sold and transferred to Sweeney, all his interest in the same, and which share, half and interest, he estimated at $3,500, to have and to hold his share, half and interest in said firm and said wharf-boat, and boat-store, in order to secure the payment of his debt to the city of Wheeling, and he put the said Sweeney in the possession of said property, said Sweeney to hold the same with power to do the best he could with the property, in order to pay the debt due the city of Wheeling, and also to promote the just interest of said Maier." Sweeney sold this property under this trust, on the twenty-third day of October, 1866, at public auction, when McKinley, the other member of the firm of Maier & McKinley, purchased said property, at the price of $1,593, which price he paid to the trustee, Sweeney. The plaintiff's social creditors of the firm of Maier & McKinley, having obtained a judgement after the sale upon their debt against said firm, and having sued out a *fi. fa.* with a return of "No property," filed their suggestion, and summoned Sweeney and the bank in which the money was deposited, as garnishees, claiming a lien on this money as the social effects of Maier & McKinley.—Afterwards they filed a bill in chancery to enforce their lien, and convened the social creditors of the firm and made the firm, and Sweeney, and the city of Wheeling, defendants.—HELD:

That the money in the hands of Sweeney, was the individual money of Maier, being the price paid by McKinley for the interest of said Maier, and that the city of Wheeling is entitled to be paid her debt out of this fund in preference to the social creditors of said

firm; and said social creditors are to look to the property in the hands of the other partner, McKinley, for the payment of their debts.

*Supersedeas* and appeal, granted on the petition of the City of Wheeling, from a decree of the circuit court of Ohio county, rendered on the nineteenth day of June, 1875, in a suit then pending in said court, wherein James Maxwell, Thomas J. Campbell, and George R. Tingle, as partners under the firm name of Maxwell, Campbell & Tingle, were complainants, and Conrad Maier and John S. McKinley, as partners, under the firm name of Maier & McKinley, the said City of Wheeling, Andrew J. Sweeney, as trustee, and also as Mayor of said City of Wheeling, and Sobieski Brady, were respondents.

The facts are stated in the opinion of the Court.

The Hon. Thayer Melvin, judge of said circuit court, presided at the hearing below.

*Asbury J. Clarke* for the appellant.

*Daniel Peck* for the appellees.

EDMISTON, JUDGE:

Maier & McKinley were partners in a wharf-boat and a grocery store consisting, mostly, of steamboat supplies. On the twenty-first day of December, 1866, Maier, being a defaulter to the City of Wheeling, as wharfmaster, for a considerable sum, executed a certain paper in the following words: "Whereas, I, Conrad Maier, am indebted to the City of Wheeling, as wharfmaster of said city, in an amount not yet ascertained, and I am desirous to secure the payment thereof: Now, I, the said Conrad Maier, in consideration of the premises, and of one dollar to me paid by A. J. Sweeney, have, and by these presents do, give, grant, bargain and sell unto the said Andrew J. Sweeney all my undivided half of the wharfboat and boat store in the City of Wheeling, and which wharfboat and boat store is owned by the firm of Maier & McKinley; and I do so sell and transfer unto said Sweeney all my interest in the same, for the purpose

aforesaid, and which share, half, and interest I estimate at thirty-five hundred dollars, to have and to hold my said share, half, and interest in said firm and said wharf-boat and boat store, unto the said Sweeney, in order to secure the payment of my debt to the said city of Wheeling, and to secure to the said city the payment of all I, said Maier, owe to said city, and I do hereby put the said Sweeney, his agents and servants into the possession of them, said Sweeney, his agents and servants, to hold the same, with power to do the best he, said Sweeney, can do with the same, in order to pay my said debts to the said city, and also to promote the just intent of me, said Maier, next after the payment of said debt. The said wharfboat is at the landing in Wheeling, and the said boat store is on Water street, in No. 41.

Witness my hand and seal this twenty-first day of September, 1866.

C. MAIER."    [SEAL.]

The paper was duly admitted to record, in Ohio county, on the same day.

Sweeney advertised in the newspapers of the City of Wheeling, that he would sell this property on the sixteenth day of October, 1866, and did sell it on the twenty-third, the day to which the sale had been adjourned, and McKinley, the other partner, became the purchaser at the price of $1,593, which sum he paid to Sweeney in cash, and he deposited the same in Bank.

Maxwell, Campbell & Tingle obtained a judgment against Maier & McKinley, by confession, on the twenty-third day of October, 1866, for the sum of $419,93; and sued out execution thereon, on the thirtieth of the same month, which was returned by the Sheriff of Ohio county, "No property." By reason of this execution levied, they issued a suggestion against the "Merchants National Bank of Wheeling" (in which Sweeney had deposited the money), and A. J. Sweeney, Mayor of the City of Wheeling, for the purpose of having so much of said fund sequestered as would pay their judgment.

Instead of proceeding at law, they filed a bill in chancery, setting out all the facts, concerning all the partnership credits of Maier & McKinley; and claiming that the funds arising under the sale made by Sweeney, were partnership funds, and should be applied to the payment of partnership debts before the City of Wheeling should have any part thereof.

The City and Sweeney filed their answers, and denied the superior right of the social creditors, but insisted that the funds in controversy were the individual funds of Maier, and that the City of Wheeling, by force of its elder and superior lien, was entitled to have the said funds applied to the payment of the debt due from Maier to the city, and to secure which this property had been conveyed in said deed.

Some depositions were taken, but I do not think it is necessary to notice them, as they do not affect the question that arises in this case.

The cause was referred to a commissioner to report the amount of partnership debts, priorities thereof, with the amount of the fund for distribution, as well as the debt due to the City of Wheeling.

Upon the coming in of this report, the court, on the nineteenth day of June, 1875, approved and confirmed said report, and decreed that said fund should be paid out to the partnership creditors of the firm of Maier & McKinley, and that the city of Wheeling should only share in said fund after all the social creditors had been paid and satisfied. The debts of the social creditors consumed nearly, or quite, all of the fund.

From this decree the City of Wheeling appealed to this Court.

The question presented here is, what was the effect of the conveyance made by the said Maier to Sweeney? Did it convey the interests of Maier in the partnership property subject to the rights of the other partner and of the partnership creditors? Or did it convey the half

of the property ; and upon a sale thereof, was the price obtained for it, the representative of the partnership property, and liable first to the payment of the social creditors? Upon the answer to these questions depends the correctness or incorrectness of the decree in this case now under review. The opinion of the circuit court was based upon the theory that the money was the social property of the firm, and simply represented the property as such social effects, as it was when the deed was made to Sweeney.

There are some questions of law so well settled in regard to partnership transactions, that it is only necessary to announce them, for all to acquiesce therein.

One is, that partnership debts are entitled to be first first paid out of partnership effects, before the effects can be subjected to the satisfaction of the individual debts of the partners. *Christian v. Ellis*, 1 Gratt. 396.

Another is, the individual interest of one partner may be assigned by him, or attached, or seized by an execution, and sold, and all these proceedings are treated as equivalent to each other; and the effect, as to the rights of all parties, will be the same, whichever mode may be resorted to for the purpose of passing or procuring the interest of the partners in the social effects. In case of a partnership, the joint effects belong to the firm, and not to the partners, each of whom is entitled only to a share of what may remain after the payment of the partnership debts, and no greater interest can be derived from a voluntary assignment of his share, or a sale of it under execution.

A preference exists in favor of a joint creditor of a firm, founded on no merits of his own, but on the equity which springs from the nature of the contract between the parties themselves. *Doner v. Stauffer*, 1 Penrose & Watts (Pa.) 198.

So far as I know, no case has been decided in the Supreme Court of Virginia, or of this State, in which the question arising in this case has been decided. There-

fore we are compelled to look to the English decisions, and those of other States, for authorities, or for reasons, for our guidance.

In the case of *Phillips v. Cook*, 24 Wend. 389, it is *decided* that, on an execution against one partner, the· sheriff may seize the entire partnership effects, or so much thereof as will satisfy the execution, and sell the interest of the partner against whom the execution is issued, and an action of trespass will not lie against the sheriff at the suit of the other partner, or his assignees, for delivering the purchaser the property sold. The purchaser, under such circumstances, becomes a tenant in common with the other partner ; and if he purchased with notice that the goods were partnership effects, takes subject to an account between the partners, and the equitable claims of the creditors of the firm in the name of the other partner.

From this it appears that, upon selling the interest of the partner, you sell but the interest he has after the payment of the partnership debts. This is evidently upon the principle that the property belongs to the firm, and not to the parties; that all the interest the parties have in the social effects, is the share that will be due them, according to the interest they have in the stock after the payment of all the debts of the firm.

In the case before us, Maier conveyed all his half, and interest in the partnership property, to Sweeney. His interest was one-half after the payment of the partnership debts ; it was one-half because he had a half interest in the firm.

I understand it to be a clear proposition of law, in this country, that a man cannot convey any greater right or interest in property, by deed or otherwise, than he owns. If this party was only the owner of one-half of this property, after the payment of the partnership debts, I do not see how he could convey a greater interest. I do not think, under a fair construction of the deed of assignment, Maier attempted to convey more than the

1876.
June Term.

Maxwell, Campbell & Tingle
v.
City of Wheel'g

interest he had as a partner of McKinley; he specifies in it that it is partnership property, and sells his half, and interest, and no more. When we see what that interest is, we see what he intends to sell and convey in this deed, and we see that that is all he can sell and convey. I refer to the above case, with all the authorities cited. Storey on Part., section 311. *Wiles v. Maddox,* 26 Mo. 77. *Doner v. Stauffer,* 1 Penrose & Watts. (Pa.) 198.

If it be correct that only the interest of the partner can be sold, and nothing more, and that interest, whatever it be, is all that the purchaser will be entitled to, after the discharge of all the partnership debts, it must follow, that when his interest is so sold, that the price which it brings is the money of the partner, and is applicable to the payment of the execution by which the sale is made, or the debt in the deed of trust, for which such interest was conveyed as a security. As authority upon this point, I refer again to the opinion of the court, delivered by Cowan, J., in the case of *Phillips v. Cook.* And also to the opinion of Gibson, C. J., in the case of *Doner v. Stauffer,* where, at page 204, he says: " In consequence of the rule, as I have stated it, a second execution creditor sells, not the chattels of the partnership, but the interest of the partner, encumbered with the joint debts; and the joint creditors, therefore, have no claim to the proceeds. To allow them the proceeds, and recourse to the property in the hands of the purchaser, would be to subject it to a double satisfaction. Neither can they take the proceeds, or the property, at their election. They can interfere, at all, only on the grounds of a preference which has regard only to the partnership effects, and these have not been sold, but only the subordinate interest of the partner, which was, strictly speaking, his separate estate. Their recourse, therefore, is, necessarily, to the property in the hands of the purchaser. Now, had the sheriff sold the interest of but one of the partners, the execution creditor would have clearly been entitled to the money."

1876.
June Term.

Maxwell, Camp-
bell & Tingle
v.
City of Wheel'g

McKinley, the other partner, knowing all about the property, and the state of the debts, purchased this property, whereby he became the entire owner of the property, and the social creditors would have been subjected to no inconvenience in pursuing this property in his hands, for the payment of their debts. McKinley could not complain, nor could he have any relief. The rights of the creditors to seize, and sell, this property in his hands, could not be questioned by any one. As I understand the law in regard to this class of cases, the creditors would be subjected to less inconvenience in this case, than in almost any other in which a sale of this kind would take place.

I am, therefore, of opinion that the decree of the circuit court is erroneous, and the same is reversed, and annulled, with costs to the City of Wheeling, the appellant.

The other Judges concurred.

The decree entered in this Court is as follows:

And this Court, proceeding to render such a decree as the circuit court should have done, it is adjudged, ordered, and decreed, that the fund, which amounts to the sum of $1,486.14, with interest thereon from the twenty-third of April, 1867, be paid out, and distributed, by the said A. J. Sweeney, trustee, as follows:

*First.* The costs of suit in the circuit court, including the costs of the plaintiffs, and the City of Wheeling.

*Second.* Pay to the City of Wheeling the sum of ten hundred and seventy dollars and forty-one cents, with interest thereon, from the twenty-fifth day of October, 1866, being the sum found due the City of Wheeling from Conrad Maier.

*Third.* Pay to Messrs. Morrison & Co. their judgment for the sum of $85.50, with interest thereon from the twenty-sixth day of October, 1866, and $2.45 costs.

*Fourth.* Pay to Messrs. Dunly & Co. the amount of their judgment for the sum of $90.28, with interest

thereon from the twenty-sixth day of October, 1866, and $2.15 costs.

*Fifth.* Pay to Messrs. Maxwell, Campbell & Tingle, the residue that may remain in his hands, if any, on their judgment for the sum of $627.89, with interest thereon from the twenty-first day of January, 1875, till paid, and $6.89 costs.

It appearing to the court, that said judgment creditors are the social creditors of the firm of said Maier & McKinley, and that their priorities are as above presented, as appears from the report of Commissioner Forbes: And it further appearing that there are no other separate creditors of said Maier, who proved any debts against him. And this cause is remanded to the circuit court, with instructions to enforce the provisions of this decree, by proper process, if that should become necessary.

DECREE REVERSED, AND CORRECTED, AND SUIT REMANDED.