Eaton et al. *v.* Whitcomb.

⟶⟶❀⊛⊛❀⟵⟵

EATON & SHAW *v.* HIRAM M. WHITCOMB.

The firm of F. & S. having an account against W., F. sold out his interest in the property and demands of the firm to E., and E. entered into partnership with S., and the business was conducted under the firm of E. & S.; after this, and after E. & S. had ceased transacting business as partners, W. examined his account upon the books of F. & S., and admitted it to be correct, and consented that it might be charged to him upon the books of E. & S., and it was accordingly so charged; and it was held that E. & S. might, in an action on book account in their own names against W., recover the amount thus transferred from the books of F. & S.

In such case, F. & S. having an account against W., S., who was a member of the firm, contracted with W. for a quantity of building materials, to be used by S. in the erection of a house which he was building for himself, and in which the firm of F. & S. had no interest, and agreed that the same, when furnished, should apply in payment of the account which F. & S. then had against W., and that the balance, which should be due for the materials, should be paid in goods out of the store of F. & S. W. knew that F. had no interest in the building on which these materials were to be used, but, relying upon this agreement on the part of S., furnished materials to S. to an amount ex-

81

ceeding the amount due from him to F. & S.   F. sold out his interest in the property and demands of the firm of F. & S. to E., and E. entered into co-partnership with S., and the business was conducted under the firm of E. & S., and W. consented that the account standing against him on the books of F. & S. should be charged to him on the books of E. & S.   W., after he had de-livered to S. lumber sufficient to pay the account of F. & S. against him, con-tinued to furnish materials to S., and from time to time, both before and after the firm of E. & S. had commenced, took goods from the store, intending to have them apply in payment for the lumber thus delivered by him to S., and which goods S. delivered to him, also, with the understanding that they were to apply in payment for such lumber.   The lumber, &c., delivered by W. to S., was all delivered prior to the formation of the firm of E. & S.   None of this lumber was credited on the books of F. & S., or E. & S., and neither F. nor E. was aware but that the account against W., as it stood upon the books, was wholly due from W., they neither of them having any knowledge of the contract between S. and W.   And it was held, in an action on book account, brought by E. & S. against W., that the contract thus made by S. was within the scope of his authority, as partner, and that the amount delivered to him by W. must offset against the account of E. & S. against him.

But, it appearing that W. had also delivered to E. & S. lumber &c. which was used for the benefit of the firm, and which was delivered expressly in pay-ment of the account of the firm against him, it was also held that the amount thus delivered must be first offset against the account of the firm, and that then so much of the amount delivered by W. to S., under the above contract, as was necessary to balance the remainder of the account of the firm, should be offset against that account; and that W. was not entitled to recover against the firm any balance, for the property thus delivered to S., above what was necessary to balance the account of the firm, after first applying the items which accrued in express payment of the account of the firm, and of which the whole firm received the benefit.

BOOK ACCOUNT.   Judgment to account was rendered in the county court, and an auditor was appointed, who reported the facts found by him as follows.

The plaintiffs presented an account of $49.65; of which sum $39.55 was originally an account in favor of the firm of Fuller & Shaw against this defendant, for goods delivered by them to the de-fendant, while they were partners in the mercantile business.   On the 4th day of March, 1842, Thomas H. Fuller, one of the firm of Fuller & Shaw, sold to Horace Eaton, one of the present plaintiffs, all his interest in the goods and demands belonging to the firm of Fuller & Shaw, the account of the defendant being included in the

sale, and at the same time Eaton entered into partnership with Shaw, and they continued to transact business as merchants, under the firm of Eaton & Shaw, until some time in October, 1842. On the 8th day of October, 1842, soon after the firm of Eaton & Shaw failed in business, Fuller, the former partner of Shaw, being then clerk of Eaton & Shaw, called on the defendant to examine the account against him on the books of Fuller & Shaw. The defendant, after a full examination, made no objection to the account. Fuller then informed the defendant, that he, Fuller, had sold his interest in the defendant's account to Eaton, and that he would charge the same to the defendant on the books of Eaton & Shaw, if he, defendant, had no objection. The defendant then consented and agreed that the account might be so charged, and the charge was made accordingly in the presence of the defendant. At this time the defendant did not inform either Fuller, or Eaton, that he had any claim against Shaw, that ought to be offset against this acccount of Fuller & Shaw. The defendant admitted, on the trial, that the items in the account presented by the plaintiffs were delivered to the defendant, and were properly charged at the time, but objected to the allowance of the account of Fuller & Shaw to the plaintiffs in this action.

The defendant presented an account against the plaintiffs, amounting in the whole to $54.07,—of which sum $8.96 was conceded, by the plaintiffs, to have accrued for the benefit of their firm, and to be properly charged to them; the balance of the defendant's account, being $45.11, accrued as follows.

The defendant commenced obtaining goods, on credit, at the store of Fuller & Shaw, on the 19th of October, 1841, and so continued until December 3, 1841, at which time the amount against him, on their books, was $21.24, for which he was liable to pay in money. On that day the defendant made a contract with the plaintiff Shaw, who was then one of the firm of Fuller & Shaw, to furnish to Shaw materials for building a dwelling house for the sole use and benefit of Shaw, and in no way for the benefit of Fuller, the other partner,—which fact was then well known to the defendant,— and Shaw agreed to pay the defendant for said materials, by applying them in payment of the account then against the defendant on the books of Fuller & Shaw, so far as that account would go, and

to pay the balance, over said account, in goods out of the store of the firm. The defendant, relying on this contract, furnished to Shaw materials to the amount of $45.11, above specified, all of which were delivered on or before March 1, 1842; and all the materials, so furnished, were used by Shaw, and no part of them went to the benefit of Fuller, or Eaton. The defendant procured the goods charged in the plaintiffs' account after the 3d day of December, 1841, from time to time, by the consent of Shaw, under this contract, intending to have them apply in payment for the materials so furnished, and the goods were delivered by Shaw for that purpose, as well before, as after, Eaton became a partner. The goods so delivered to the defendant were regularly charged on the company books to the defendant; but none of the materials delivered by the defendant were credited to him on said books. Neither Eaton, nor Fuller, was informed of the contract between the defendant and Shaw, nor did they learn the situation of the business until some time in October, 1842; but they both supposed that the goods delivered to the defendant were delivered upon his credit alone, and that the accounts of the parties stood, as they appeared upon the books.

The auditor decided that the sum of $8.96 of the defendant's account, above specified, of which the firm, as such, had received the benefit, should be offset first against the plaintiffs' account, and that so much of the sum of $45.11, above mentioned, as would be necessary to balance the remainder of the plaintiffs' account, should also be offset against that account, and that there was nothing due from either party to balance book accounts between them.

Both parties filed exceptions to the report of the auditor; but the county court accepted the report, and rendered judgment for the defendant to recover his cost; to which decision exceptions were taken and filed by both parties.

*J. & J. G. Smith* and *T. Childs* for plaintiffs.

1.  The articles charged in the plaintiffs' account, which were delivered by Fuller & Shaw to the defendant, can be recovered in this action.

2.  The lumber, delivered to Shaw by the defendant, on Shaw's individual account, could not be legally charged to Eaton & Shaw,

nor can such account be offset against any claim in favor of Eaton & Shaw against the defendant. Shaw could not, without the consent of his partner, receive any property to his own separate use, in payment and discharge of a debt due to the company ; neither could he sell goods, belonging to the company, in payment of a private debt against himself, nor for property, which the defendant knew was designed .to go, and which did in fact go, to the separate use of Shaw.    5. Cow. 489.    7 Wend. 326.    2 Johns. 500.    1 Wend. 531.    16 Johns. 34.

*Smalley, Adams & Hoyt* for defendant.

1.   The contract between the defendant and Shaw, being without fraud or collusion, was binding on the firm, inasmuch as one partner has the power to sell the partnership effects, and to receive payment therefor in any manner he may see fit, and to release, or discharge partnership debts.    *Strong* v. *Fish,* 13 Vt. 277.    *Fay et al.* v. *Green,* 1 Aik. 71.    *Swan et al.* v. *Steele et al.,* 7 East. 210.

2.   If the agreement, however, should be deemed void, then it is insisted that that part of the plaintiffs' account, which accrued to the firm of Fuller & Shaw, has not been assigned to Eaton & Shaw, so as to make it a legitimate charge on book.

The opinion of the court was delivered by

HEBARD, J.   The first question presented is, can the amount of the account in the name of Fuller & Shaw be recovered in this suit ? or had the plaintiffs a right to charge it over, and make it a part of their account ? This will depend upon the contract of the parties.   Without an agreement to that effect, it could not be done; and, by the agreement of the defendant, it might as well be charged as any thing else.   The right to recover for every item of charge on book depends upon a contract in relation to the article, express, or implied.   That the contract is special has been holden as no objection.   That there is a particular agreement, as to the time and mode of payment, has been considered as forming no obstacle in the way of a charge on book ; and in the recent case of *Spear* v. *Peck,* it was held, that an account stated might be charged on book, although the account, out of which the balance was ascertained, was beyond the jurisdiction of the court, to which the action was brought.

The auditor has found the fact, upon which the plaintiffs' right to charge depends, to wit, that the defendant consented that this account might be charged in the plaintiffs' account against him. This consent, when carried into effect, was in the nature of a contract, by which the defendant agreed, that whatever claim any one had upon him for that account might be prosecuted in the name of the plaintiffs.

The other question depends upon the effect, that is to be given to the contract between Shaw and the defendant, in relation to receiving lumber for what there was due to Fuller & Shaw, and for such goods as he should afterwards take out of the store. It is a general principle of law, that one partner cannot divert the partnership property to his own use. It is also a principle of law, that each partner is the general agent of the firm, in relation to all business within the scope of the partnership. All these general principles are, to some extent, modified by the *custom* and *business habits* of the community. It is usual for merchants to receive in payment all sorts of barter and articles of traffic. The case does not show that the defendant could be supposed to be influenced by any improper motive, at the time he made the contract with Shaw. The case of *Strong* v. *Fish* was for an existing indebtedness. In this case the defendant actually parted with his property, under a contract made with one of the partners. That Shaw was to use it for his own benefit could make no difference. He might do so, if the amount of the debt were paid to him in money. The principle is settled by the case of *Strong* v. *Fish* and settled to a point beyond what is contended for in this case.

Judgment affirmed.

WILLIAMS, CH. J., dissenting. I cannot come to the conclusion, to which my brethren have arrived in this case. The plaintiffs, in my opinion, are entitled to judgment for the whole of their account. It is very desirable, that, in all mercantile transactions, in all transactions which respect partners, and bills of exchange, the decisions in the several States should be uniform, and should be in unison with the decisions in Great Britain. The different parties to be affected by them frequently reside in different States and governments, and hence the law in relation to these subjects should

be the same. In all such transactions I receive as an authority a decision made in any of the neighboring states, unless it contravene some principle previously established here, or is plainly at variance with the principles of the common law. I should therefore receive the decision, which has been read from 7 Wendell 326, *Evernghim* v. *Ensworth*, as decisive of this question, unless it was in contravention of the principles of the common law. I apprehend, however, that the principles laid down in that case are of known and approved authority in the commercial world, where the common law is recognized.

The power of one partner to bind the firm by any contract of his is restricted to transactions in relation to the business of the firm, and for the benefit of the firm ; so far as this, each partner may be considered as the accredited agent of all, and any contracts he may make in the partnership business will be binding on all. The partner may exceed his authority in this particular, and yet bind his co-partner, if the business, about which he contracts, is apparently the business of the firm, and the contrary is not known to the person with whom he contracts. If the person, with whom he transacts business, is ignorant of his want of authority, and is guilty of no fraud, the firm may be bound, upon the same principle that others are sometimes bound by the acts of agents, apparently within the scope of their authority.

But when the transaction has no apparent relation to the partnership business, but is evidently for the private benefit of the partner, and not for the benefit of the company, I apprehend the partners are not bound, unless they have assented to the transaction ; and the burden of showing this is upon the person contracting with the individual partner. This principle was laid down by Eyre, Ch. J., in *Ex parte Agace*, 2 Cox 312. "When, from the nature of the business, it is apparent that it is for the separate account and benefit of the individual, it is incumbent on the person dealing to show a previous authority, or subsequent approbation." This was laid down by Lord Eldon, in *Ex parte Bonbonus*, 8 Ves. 540. If a partner attempt to bind a firm in any contract connected with his private business alone, or if he engages in a contract connected with the business, but from which he solely derives the benefit, the firm are not liable, unless from their knowledge and assent to the

Eaton et al. *v.* Whitcomb.

transaction. The former is laid down in the case of *Sandilands v. Marsh,* 2 B. & Ald. 678, and the latter proposition in the case of *Bignold v. Waterhouse,* 1 M. & S. 255. Without multiplying authorities to this point, I will only refer to the cases of *Vere v. Ashby,* 10 B. & C. 288, [21 E. C. L. 79,] and *Jones v. Corbett et al.,* 2 Ad. & El., N. S., 828,—where the principle was recognized, though the decision was upon the insufficiency of the pleas. In the case of *Chazournes v. Edwards,* 3 Pick. 5, the doctrine was distinctly laid down by Ch. J. Parker ; and the reporter, in a note, adds, " If, from the subject matter of the contract, or the course of dealing of the partnership, the creditor was chargeable with constructive notice of the fact, that the debt, for which he takes the partnership security, was a private debt of a particular partner, the partnership is not liable ;" and, among other cases referred to, is the case from 7 Wendell, to which I have before adverted.

Applying these principles to the facts in this case, I think judgment should be for the plaintiffs. The account in favor of Fuller & Shaw was properly charged to the defendant, as he assented thereto, after the firm of Eaton & Shaw was formed. Before any agreement was made by Shaw and the defendant, there was due the sum of $21.24, which was payable in cash. The goods, which the defendant received from time to time, were charged, in the usual course of business, to the defendant, and stood on the books of the plaintiffs as a debt due from the defendant, and, after allowing the items which were credited by the plaintiffs upon their books, there remained an apparent balance due to the plaintiffs of $44.34. This, by the report of the auditor and the judgment of the county court, was absorbed and paid by the account of the defendant for materials found and services rendered for the benefit of Shaw, the other partner, not in any way connected with, or for the business or benefit of, the partners, but solely and exclusively for the private business and benefit of Shaw, in building a house for himself. The agreement, made between the defendant and Shaw, was a private agreement between them, of which neither Fuller nor Eaton had any knowledge, and of which they could not be presumed to have any knowledge, as the defendant was, from time to time, made debtor on the partnership books for every thing he received. To give effect to this agreement is a fraud on Fuller and on Eaton.

Eaton et al. *v.* Whitcomb.

The defendant is to be charged with knowledge, that this was not for the benefit of the firm, or in any business connected with the firm ; and, unless he obtained the consent of the other partners, or they had knowledge of the transactions, and did not dissent, he cannot thus extinguish his debt to the firm. If, in the ordinary business of a mercantile firm, articles are received by an individual partner and made use of in his family, the consent of the other partners might be proved, or inferred, and none of the consequences, which have been depicted in the argument, would follow.

Of the case of *Strong* v. *Fish*, 13 Vt. 277, I can only say, that I had entertained a different opinion in that case in the county court, and the judgment of the county court was reversed. The general principles laid down by the court I readily accede to. The authority of *Fay* v. *Green*, 1 Aik. 71, was relied on in that case. This point was not made by the counsel, and was passed over by them *sub silentio*. But in both cases stress was laid upon the fact, that there was no fraud, or bad faith. There is a material distinction, in the authority of partners, between two attorneys in partnership and partners in a mercantile transaction. One attorney has no authority to bind his partner by a promissory note; *Hedley* v. *Bainbridge*, 3 Ad. & El., N. S., 316. One may be the prominent man in all business in court, and the other principally confined to office business. A contract, made with the prominent and known partner, in relation to the management of a cause, and the compensation therefor, might not be a fraud on the other partner, when it would be in a mercantile partnership. I should therefore confine the authority of the case of *Strong* v. *Fish* to cases similar to that case, and not extend it to a mercantile transaction.

In the present case, I consider the agreement between Shaw and the defendant as not binding on the plaintiffs, as, in a legal sense, a fraud on them, as made without authority and against their consent, and that the defendant must, from the nature of the transaction, have known this want of authority. I should hold him liable for the whole amount of his account, and render judgment on the report for the plaintiffs.