Miner v. Pierce et al.

SAMUEL MINER v. CHARLES H. PIERCE AND ALPHEUS A. ADAMS.

[ IN CHANCERY. ]

*Partnership.     Chancery.*

Where in an action against two partners, A. and M., the plaintiff recovered judgment against A., but failed to recover against M., and the latter recovered final judgment, in said action, against the plaintiff for the costs, that judgment settled the question that the plaintiff's demand was the separate debt of A.

A. and M. were copartners and equal owners in trade at two different places, at one of which the business was managed by A. alone. From this M. never received anything, and A. did not show any loss. *Held,* that in an accounting between them, in a chancery proceeding, A. should be charged with the value of the goods taken to the shop which he so managed, and pay to M. one half of the same, all the goods at the other place of business having gone to pay a partnership debt.

Therefore P. having attached and sold, on a separate debt of A., what there was remaining of these goods in said shop at the time of attachment, which was less than half of the amount, in value, taken there by the copartners M. and A., and was therefore less than A.'s liability to M., he, P., is bound to respond to M. the full amount of the goods so attached and sold, although M. did not interfere and prevent the sale; the attachment having been made after the partnership had failed and when it was in condition to be immediately wound up, P. was bound to take notice of the rights of M. Nor is P. relieved from this liability on the ground that he sold A.'s interest only.

BILL IN CHANCERY.    The case was heard on the bill, answer of Pierce, replication and proof (all of which is sufficiently stated in the opinion of the court) at the September Term, 1864, BARRETT, Chancellor, when a decree was ordered substantially as claimed in the bill—from which defendant Pierce appealed—the bill being taken as confessed as to the defendant Adams.

————, for the defendant.

*Charles N. Davenport,* for the orator.

The opinion of the court was delivered by

PECK, J. The orator in his bill alleges in substance that in January, 1861, he and the defendant Adams entered into a copartnership in the millinery business, to be managed by the respective wives of the partners, at Wilmington, each party furnishing half the capital, each putting in about $250. That they continued to carry on the business at Wilmington until June 14th, 1861, during which time they manufactured and sold many of the goods on hand at the commencement of the business, and made new purchases from time to time to replenish their stocks—that on the first of April, 1861, they established a branch shop at Jamaica, which was managed by the wife of Adams till June 14th, 1861, during which time the shop at Jamaica was supplied with goods from the shop at Wilmington; that June 14th, 1861, the defendant Pierce attached the goods in the shop at Jamaica on a debt in his favor against Adams, and sold them without the consent of the orator, and against his remonstrance, and that neither of the defendants has ever accounted to the orator for the same, although the defendant Pierce knew that the orator was such partner and interested in the goods. It also alleges that Adams has never accounted for any of the goods sold at the Jamaica shop before the attachment, nor for any of the profits, and that the orator has advanced more in labor, and otherwise, in carrying on the business of the firm than Adams has, and that at the time of the attachment the firm was indebted to sundry persons for goods, some of which debts the orator has paid, and some remain still unpaid; that Adams at the time of the attachment was insolvent and has so continued ever since, and that upon a fair accounting it would appear that Adams had no interest in the goods attached which could be reached by his private creditors, and that the orator had a prior lien on the goods for his advances for the firm, and to pay the company debts. The bill prays that an account be taken of the partnership dealings and liabilities, and that Adams be decreed to pay what is due the orator, and that Pierce be decreed to pay to the orator the value of the goods attached and appropriated by him, and for further relief.

The bill is taken as confessed as to Adams, and the defendant

Pierce answers.   In his answer he neither admits or denies the co-partnership nor the allegations of the bill relating to the business and dealings and state of the partnership accounts as between the orator and Adams, admits the attachment, and that by an arrangement between Adams and himself, he employed one Mrs. Knowlton to work up and sell the goods, and that she did so and paid over the money to him, stating the amount, which he applied on his debt against Adams, except a few refuse goods that she could not sell, and as to them he caused Adams' interest in them to be sold on the execution against Adams, from which execution sale he realized about $25. Some other matters are alleged in the answer by way of defence. The answer is traversed and testimony filed on the part of the orator, but none on the part of the defence.    The material facts alleged in the bill are proved by the testimony.   It is stated in the answer of Pierce that the debt on which he attached the goods in question was a promissory note for $130. given for goods sold by him to Adams, May 1st, 1861, and that at that time he was ignorant of the existence of the partnership between the orator and Adams ; also that Adams removed those goods into the Jamaica shop.   It is insisted by the counsel for Pierce that these facts show that the debt on which Pierce attached the goods was a partnership debt.   But it appears by the answer and proofs that after Pierce attached the goods in the suit against Adams, he discontinued the suit and commenced a suit against Adams and the orator on the same demand, and recovered against Adams, but failed to recover against the orator ; that the orator recovered final judgment against Pierce in that action for his costs. That judgment settles this question against the defendant Pierce, and the debt must be regarded as the separate debt of Adams.   As to the allegation in the answer, that the goods sold by Pierce to Adams went into the shop at Jamaica, we are not prepared to say that it is so far responsive to the bill as to be evidence of the fact.   But if it is so, it does not sufficiently appear that they were appropriated to the partnership use, or that they constituted any portion of the goods attached by the defendant Pierce, to render that fact available in defence.   It appears that at some time during the copartnership, Adams himself was engaged in peddling ; and to make an assortment as he said, he took some $50. worth of goods out of the Wilming-

ton shop and put with his own, and went on a peddling expedition, and ultimately left some of the goods he took from the Wilmington shop at Readsboro. The evidence leaves the case open to an inference that the goods Adams bought of Pierce were appropriated by Adams to his private use. Pierce's demand must be regarded as the separate debt of Adams, and the goods he attached upon it, and ultimately sold, mostly at private sale, must be treated as the property of the copartnership of the orator and Adams.

Although Pierce alone defends, it is necessary in order to determine the relative rights of the orator and Pierce, to settle the rights of the orator as between him and Adams. It appears from the proofs in the case that all the avails of the shop at Wilmington went into the business to purchase goods and defray expenses of the concern, and that all the goods on hand at that shop at the time of the attachment, went to Pratt to pay a copartnership debt contracted for goods, and upon which Pratt attached the goods. It further appears that the orator never received any thing from the Jamaica branch of the business managed by Adams. As Adams does not show that there was a loss in the business of the Jamaica shop, he can not object to being charged with the value of the goods taken to that shop, which the proof shows was $500. He for the same reason should be charged with the $51.96 taken by him from the Wilmington shop, making $551.96, with which Adams should be charged. One half of this being $275.98, Adams should pay to the orator to adjust the accounts of the copartnership.

It appears that at the time the partnership failed and Pierce attached the goods, there was but $223.23 in goods at the Jamaica shop, and which, on this basis, all belonged in equity to the orator, so that Adams had no equitable interest in the goods attached by Pierce. The outstanding liability of the firm of $50., does not vary the result. The decree against Adams is therefore correct. Unless Pierce in virtue of his attachment on the separate debt against Adams, acquired a greater right than Adams had in the goods, he is bound to respond to the orator the full amount of the goods he appropriated, (the $223.33,) as that does not exceed Adams' liability to the orator. Whatever the rule may be at law, it was fully settled in *Washburn* v. *Bank of Bellows Falls*, 19 Vt. 278, that a separate

creditor of one member of a copartnership acquires no greater right by attachment of the partnership effects, than that member of the firm has, after payment of all the debts of the firm and a final settlement between the copartners. It is true that bill was brought by the partnership creditors, but the case is put upon the ground of the equity of the partners as between themselves. It is insisted that the orator has lost this equitable right by delaying seasonably to interfere and prevent the sale. How this might be in case of an attachment and sale while the partnership business is still going on apparently prosperous it is not necessary to decide. In this case the partnership had failed and was in a condition necessarily to be immediately wound up, which the defendant must have known, and the defendant was bound, under the circumstances disclosed, to take notice of the rights of the orator. It is further insisted that as to the portion of the goods sold on the execution, the defendant Pierce caused to be sold only the interest of Adams, and that he ought not to be held responsible, but that the orator is bound to follow the goods into the hands of the purchasers at the auction sale. But practically he has disposed of the goods without right to do so, and deprived the orator of the benefit of them, and should be held to account for their value. If he had sold Adams' interest only, and then restored the possession of them to the orator, it might be otherwise.

The decree of the court of chancery is affirmed and case remanded.