## Case No. 13,801.

### TAYLOR v. RASCH et al.

[5 N. B. R. 399;[1] 4 Amer. Law T. 201.]

District Court, E. D. Michigan. Oct. 3, 1871.

BANKRUPTCY — FRAUDULENT PREFERENCE — PARTNERSHIP PROPERTY — PAYMENT OF INDIVIDUAL DEBTS — PRACTICE IN EQUITY — ADEQUATE REMEDY AT LAW.

1. An agreement to sell an individual certain specific articles expressly for his individual use and consumption, to be paid for out of the partnership goods of the firm, is void as to the other partners.

2. Such an arrangement, made without the knowledge, assent or approval of his copartners, is therefore fraudulent and void as to them.

3. A demurrer to a bill in equity brought by the assignee, on the ground that complainant has a complete remedy at law, will be overruled where the facts show that questions of fraud, trust and partnership are all involved in the case at issue.

[This was a bill in equity by Elisha Taylor, assignee, against August Rasch and William Bernart.]

On demurrer to the bill of complaint. The bill sets up that Tillman and Silsbee, as the partners composing the firm of Tillman, Silsbee & Co., were adjudged bankrupts in the district court of the United States for the eastern district of Michigan, June thirtieth, eighteen hundred and seventy, and the complainant was appointed assignee July fifteenth, eighteen hundred and seventy; that the said firm, while it existed, was engaged in business at Detroit, in said district, in the manufacture and sale of household furniture; that Tillman and Silsbee were the general partners in the firm, and that John S. Newberry, of Detroit, was a special partner therein; that the firm was a limited partnership, and was formed under the statutes of Michigan, August fifth, eighteen hundred and sixty-seven, and was to continue until March first, eighteen hundred and seventy-three, and was duly published; that the defendants were partners, doing business at Detroit under the firm name of Rasch & Bernart, in the manufacture and sale of men's clothing. The bill then charges, "that on or about the eighteenth day of September, eighteen hundred and sixty-nine, the said William Tillman individually entered into an arrangement with the said defendants to the following effect: That he, the said Tillman, would purchase clothing from them for his own private use and consumption, and that they, the said defendants, would and should, in payment therefor, purchase and receive furniture from the said firm of Tillman, Silsbee & Co. to a like value and amount." That in pursuance of said arrangement the said Tillman afterwards purchased from the defendants, for his own private use, clothing to the value of four hundred and thirty-eight dollars. That the defendants afterwards obtained

[1] [Reprinted from 5 N. B. R. 399, by permission.]

furniture from the store and stock of Tillman, Silsbee & Co. to the amount and value in all of five hundred and twenty-three dollars and twenty-five cents, as follows: April twenty-third, eighteen hundred and seventy, three hundred and sixty-nine dollars and twenty-five cents, and May twenty-first, eighteen hundred and seventy, one hundred and fifty-four dollars. The bill further alleges, "that of the amount so received by the defendants (five hundred and twenty-three dollars and twenty-five cents) the sum of fifty dollars was paid in clothing sold and delivered by Rasch & Bernart to an employee of the said firm, and duly accounted for by him, leaving a balance of four hundred and seventy-three dollars and twenty-five cents." The bill charges that the said arrangement was so made and the furniture was so delivered without the knowledge, consent, or approval of either Silsbee or Newberry. That at the time the furniture was delivered the firm of Tillman, Silsbee & Co. was insolvent, and at the time the arrangement was made the firm had met with losses, its capital was impaired and it was indebted in large amounts. That Tillman had no right or authority to withdraw funds or property for his own private use, or to appropriate the same to the payment of his private debts, but on the contrary had largely overdrawn his account and was largely indebted to the firm. That the said arrangement and delivery of furniture in pursuance of it were not within the scope or course of business of the firm of Tillman, Silsbee & Co., which fact the defendants well knew. The bill sets up that the defendants have offered to pay to the complainant the balance of furniture obtained by them over and above the clothing and the credit of fifty dollars, but that complainant has declined to receive the same, and has required defendant to pay the full value of the furniture, less the said credit of fifty dollars. That the assets of the bankrupts are not sufficient to pay the firm debts, and the full amount and value of the said furniture will be needed for that purpose. The bill claims that the arrangement between Tillman and defendants was wholly unwarranted and illegal as against Silsbee and Newberry, and as against complainant as assignee. That the delivery and receipt of the furniture under the arrangement was and is to be deemed a fraud upon Silsbee and Newberry, and passed no title in the same to the defendants, and that the same should be deemed assets of the said firm. Prayer, that the arrangement be set aside; that the defendants be decreed to hold the furniture in trust for Silsbee and Newberry and complainant, and to produce and surrender the same to complainant, and to pay for the use and enjoyment of the same, or that they pay the full value thereof, less the said credit of fifty dollars, with interest, and for general relief.

The demurrer is general to the equity of the bill. On the argument the following grounds of demurrer were insisted on: (1) As appears by the bill the arrangement made by Tillman with the defendants was according to the ordinary course of the partnership business. (2) The partner Tillman, as the general agent of the firm, had authority to make the arrangement. (3) If the arrangement was not valid, complainant has a complete remedy at law, and quity has no jurisdiction.

Mr. Towle, for complainant.
Mr. Kirchner, for defendants.

LONGYEAR, District Judge. The first ground of demurrer is based upon the well settled rule of law that if any one holds another out to the world as having authority to do certain things in his behalf, and such other person obtains credit in consequence thereof, he will not be permitted to deny that such person had the requisite authority; and it is predicated on the allegation in the bill of credit of fifty dollars given to the defendants by the bankrupts in consequence of a payment made by them in clothing to an employee of the firm and duly accounted for by him. It is argued, the firm having thus recognized the authority of an employee to receive pay from the defendants in clothing on account, a fortiori, the defendants had a right to assume that a similar arrangement made by one of the partners would be recognized, or at least that it is evidence that such was the ordinary course of the business of the firm.

This argument is based upon the following assumptions: First. That the transaction with the employee was before the transaction with Tillman. This assumption is not supported by the bill, but by necessary inference is rebutted. The statement in the bill is, that the fifty dollars paid by the defendants to the employee was "of the amount so received by the defendants," but none of this amount was received by the defendants until several months after the original transaction between them and Tillman. Second. That the credit of fifty dollars was given to defendants solely on account of the payment made by them to the employee. Neither is this assumption supported by the bill. The statement in the bill is that the fifty dollars was paid "to an employee of the firm and duly accounted for by him." The necessary inference is, that the credit was given because the amount paid to the employee was accounted for by him. It is but another form of stating that fifty dollars had been paid to the credit of defendants by an employee of the firm. The balance of the statement is mere matter of detail, entirely unnecessary to the understanding of that portion of the case made by the bill. In the case of Hazard v. Treadwell, 1 Strange, 506, relied on by defendants' counsel, the servant had been sent

by his employer with authority to obtain the goods on the employer's credit. It was held that on a second application by the same servant the party applied to had the right to assume that he came with the same authority, although, in fact, he did not; and the employer was held liable for goods delivered to the servant on such second application. That is very different from a case like the present, where the transaction in question was long anterior to the transaction on account of which it is sought to be justified; where, in fact, no credit was given, but simply a payment made on a prior indebtedness; where no previous authority to the employee to receive pay for his employer in that manner appears, and where the credit given the defendants for the amount so paid to the employee appears to have been given only when accounted for by him. The first ground of demurrer is not sustained.

The second ground of demurrer is, that the partner Tillman, as the general agent of the firm had authority to make the arrangement with the defendants. The commendable energy of counsel on both sides, manifested in their research for, and citation of, decisions relating to this proposition, as well as in their able arguments, has been of much aid to the court in arriving at a conclusion. It is conceded that an individual partner cannot bind the concern by a note or contract given or made for his individual debt, or use and benefit, without the consent of his copartners, express or implied; nor can he, without such consent, use partnership funds or property to pay a prior individual debt; nor can he, without such consent, cancel an indebtedness to the firm by crediting upon its books an individual indebtedness of himself. But it is contended that a sale of goods in the ordinary course of the partnership business, under a contemporaneous or prior arrangement with the purchaser to pay for them in specific articles, is within the general powers of each individual partner, and that the fact that such specific articles were taken and used by such individual partner will not affect the validity of the sale; that in such case the firm must look to such individual partner for reimbursement. This, as an abstract proposition, is no doubt correct. In such case, the purchaser of the partnership goods sells his specific articles to the firm, and it is no concern of his what disposition is afterwards made of them. He does the business, it is true, with an individual member of the firm, and perhaps delivers the articles to him individually and upon his separate premises. But even this does not alter the case. See McKee v. Stroup, Rice, 291. If this were all there is of the present case, there would be no difficulty in holding the transaction between Tillman and the defendants valid. The difficulty in the case lies in the fact that the agreement was to sell to the individual partner Tillman, not to the firm, certain specific articles, expressly for his individual use and consumption, to be paid for out of partnership goods of the firm of Tillman, Silsbee & Co. I can see no difference in principle between this case and that of an agreement to pay an individual prior indebtedness out of partnership funds. In the one case the indebtedness exists when the agreement is made. In the other the indebtedness is to follow the agreement. It is just as much an individual transaction in the one case as in the other, and each must be held invalid in the same circumstances, equally with the other. The bill expressly negatives the knowledge, assent or approval of the other partners, and alleges knowledge in the defendants that the arrangement made by Tillman with them was not in accordance with the usual scope or course of dealing of the partnership. The current of authority and of decisions in this country, almost without exception, unites in denouncing such a transaction as fraudulent and void, as to the other partners. Mr. Parsons, in his treatise on Partnerships, makes use of the following language: "Instances of partners using the name or credit of the firm for their personal advantage and without authority, are constantly occurring; and as we have seen, when this is known to persons dealing with them, the firm are not held. Some difficulty often arises as to the proof of such knowledge on the part of the creditor. There is a rule, however, which rests on much authority, and is in itself reasonable, just and convenient, which would settle the most of these cases, or at least reduce them to mere questions of fact. It is, that whenever a party receives from any partner, in payment for a debt due from that partner only, whether the debt be created at the time" (thus including the very case here under consideration) "or before existing, or by way of settlement of, or security for, a debt or indebtedness, or obligation of the firm in any form" (thus putting this case and the others all in the same category), "the presumption of the law is that the partner gives this and the creditor receives it in fraud of the partnership, and has consequently no demand upon them." See, also, the numerous authorities cited by the author in the note; also Story, Partn. § 132; Homer v. Wood, 11 Cush. 62, 64. It is competent, of course, for the defendants to rebut this presumption by showing the express or implied assent of the other partners to the arrangement. But without such showing the arrangement clearly cannot be upheld. In each of the numerous adjudicated cases cited by counsel, with but two exceptions, such assent, or its absence, constituted the basis of, or at least an essential element in the decision. The exceptional cases are Strong v. Fish, 13 Vt. 277, and Eaton v. Whitcomb, 17 Vt. 641. In these cases the subject of assent was not discussed or noticed, and the arrangement was upheld. The reasoning and conclusion, however, are entirely unsatisfactory, and I cannot regard them as sound. In the latter case, Chief Justice Williams deliv-

ered a dissenting opinion, which I regard as laying down the law much more in accordance with the current of decisions. As at present appears the arrangement between Tillman and the defendants was not within the scope and course of the partnership business, which was known to the defendants, and was made without the knowledge, assent or approval of his copartners, and the same is therefore fraudulent and void as to them. The second ground of demurrer is therefore not sustained.

The third ground of demurrer is, that if the arrangement was not valid, complainant has a complete remedy at law, and equity has no jurisdiction. Cases were cited upon the argument in which actions at law had been brought and sustained in such cases, but in none of them was the question raised. In no case, however, where there was a separate equity jurisdiction, in which the question was raised, has the action at law been maintained; and in nearly every case in which the question has been so raised, equity jurisdiction has been directly asserted or strongly intimated. In an action at law the defrauding partner must be made a party plaintiff, together with his copartners, and the action is denied on the familiar rule of law that a party to a fraudulent transaction cannot himself seek to set it aside. The remedy in such cases is to the innocent defrauded partners, which cannot be sought at law and can be sought only in equity. As we have seen, the arrangement between Tillman and the defendants was presumptively fraudulent. A fraudulent purchaser may be held a mere trustee for the innocent owners or part owners. 2 Story, Eq. Jur. § 265. The case here involves to some extent the litigation of partnership relations among the partners themselves. We have, therefore, these three grounds of equity jurisdiction, viz. fraud, trust and partnership. 1 Story, Eq. Jur. § 681; Colly. Partn. § 643; Story, Partn. § 238, and note 4; Jones v. Yates, 9 Barn. & C. 532; Greeley v. Wyeth, 10 N. H. 15, 19; Pennock v. Yeager, 5 Phila. 171; Homer v. Wood, 11 Cush. 62; Estabrook v. Messersmith, 18 Wis. 545, 550; Fellows v. Wyman, 33 N. H. 351, 358. So much as to the rights and remedies of the partners in such cases. Here the remedy is sought by the assignee in bankruptcy of the firm for the benefit of creditors. Partnership creditors must be first paid out of the partnership property. Such preference, while it creates no lien, strictly speaking, on such property, may be worked out through the partners. In the ordinary creditors' bill the suit for that purpose is brought by the creditors themselves. The assignee in bankruptcy represents the creditors, and hence the suit is brought in his name. In fact, bankruptcy proceedings are in the nature of a general execution for all the creditors; and an effectual lien is created thereby for their benefit, to be enforced by and through the assignee. The creditors may pursue partnership property which has not been legally parted with in-

to whosesoever hands it may be. Under the present bankrupt law this must be done through the assignee. And where, as in this case, property has been placed beyond his reach by action at law, and the right thereto being, as we have seen, a right in equity merely, the same must be reached through the courts of equity, as is sought to be done in this case. "All rights in equity" of the bankrupts pass to the assignee by express provision of the bankrupt act, section fourteen. See 1 Story, Eq. Jur. § 675; 2 Story, Eq. Jur. § 1253; Story, Partn. §§ 97, 326, 360; Sands v. Codwise, 4 Johns. 536, 556; Ex parte Stokes, 7 Ves. 408; Clements v. Moore, 6 Wall. [73 U. S.] 299, 312; Halbert v. Grant, 4 T. B. Mon. 581; Matlack v. James, 2 Beasley [13 N. J. Eq.] 126; Hoxie v. Carr [Case No. 6,802]; Miner v. Pierce, 38 Vt. 610; Hawkeye Woolen Mills v. Conklin, 26 Iowa, 422; Flack v. Charron, 29 Md. 318; Crooker v. Crooker, 46 Me. 250, 259; Ferson v. Monroe, 21 N. H. 462; Benson v. Ela, 35 N. H. 403, 410; Tenney v. Johnson, 43 N. H. 144, 147. The third ground of demurrer is therefore not sustained.

The demurrer is overruled with costs, and the defendants have leave to answer within thirty days.

[For hearing on the issues made by the answer, see Case No. 13,800.]

---

TALYOR (READY ROOFING CO. v.). See Case No. 11,613.