CHARLES CROOKER, *in Equity, versus* W'M D. CROOKER & *als.*

In equity, the creditors of an insolvent co-partnership have a right to the payment of their claims out of the partnership property, superior to the right of creditors of an individual member. All the members of a co-partnership have a joint interest in its property, while the interest of each, as a separate member, is his share of the surplus remaining after the payment of the partnership debts.

And the implied trust or pledge, which each member of the partnership has, that its property shall be applied to the payment of its debts, extends, as well to the real estate, which has been purchased for partnership uses, with the funds of the partnership, as to stocks, chattels or debts; notwithstanding the real estate may have been conveyed by such a deed, as, under our statutes, would, *at law*, make the partners tenants in common.

And, where the creditors of one of the members of a co-partnership had instituted suits at law against him, and attached his *legal* interest in real estate thus conveyed, intending to levy thereon to satisfy their judgments, when rendered, the Court, in the exercise of its chancery powers, will interpose to protect the rights of the other partners, when the estate attached will be required to pay the debts of the firm, (including the firm's liabilities to its individual members,) and, if without it, the partnership will be insolvent.

EXCEPTIONS from the ruling of MAY, J.

BILL IN EQUITY.   The plaintiff sets forth in his bill that, in the year 1826, he formed a co-partnership with William D. Crooker of Bath, under the name and style of C. & W. D. Crooker, upon an understanding and agreement to share the losses and divide the profits of the co-partnership business equally between them.   Said co-partnership was from time to time engaged in the buying and selling of merchandise, the building and sailing of ships, the cutting and marketing of lumber, and other business, until the nineteenth day of June, 1854, when said co-partnership was dissolved.

That, on said nineteenth day of June, aforesaid, said co-partnership was owing debts to a large amount, which are still outstanding and unpaid, and that the assets of said co-partnership consist mainly of parts of certain ships, and of parcels of land.

Said parcels of land were all purchased on the credit and with the moneys of said co-partnership, but were conveyed to himself and the said William D., to have and to hold to them, their heirs and assigns, as tenants in common; and the legal title in and to said lands is now vested one-half in himself, and the other half in the said William D. Crooker.

That certain persons and corporations, [thirty in all, whose names are given,] on certain days [named in the bill,] sued out of the Supreme Judicial Court of this State writs of attachment against the said William D. Crooker, directed to the sheriffs of the several counties of said State, and their deputies, and bearing date respectively of the several days aforesaid, and caused all the right, title and interest of the said William D. in the parcels of land aforesaid to be attached. All of said suits were commenced for the recovery of debts contracted and incurred by the said William D. on his own separate and individual account and credit, and in the prosecution of business in which the said Charles had no concern or interest.   The exact aggregate amount of said debts, your orator is unable to state, but, upon information and belief, avers it to be between twenty-five and forty thousand dollars.

That the plaintiffs in the aforesaid suits have threatened, and he believes it to be their intention, to obtain satisfaction of the judgments which have been or may hereafter be rendered in said suits, by levying their executions upon the legal estate of the said William D., in the parcels of land aforesaid, and he fully believes and avers that, if said intention be carried into effect, one-half of the assets of said co-partnership will be absorbed by the payment of the separate and individual debts of the said William D., and that the remainder and residue thereof will be utterly insufficient to pay and discharge the just debts and liabilities of said co-partnership.

That he (plaintiff) has already been obliged to pay debts of said co-partnership to a large amount, out of his separate and individual property; that he has repeatedly urged said William D. to come to a settlement with him of the partnership accounts and dealings, and join with him in selling the co-partnership property, and paying the co-partnership debts. All of which the said William D. has neglected and refused to do.

That he has no adequate remedy at law, and therefore prays that the said William D., and the plaintiffs in the aforesaid suits at law against him, may be required, upon their several and respective oaths, full, true, direct and perfect answers to make to all and singular the matters and things herein before stated and charged; that the plaintiffs aforesaid may be restrained from satisfying the judgments, which have been or may be rendered in the aforesaid suits, by sale of any interest in the property of said co-partnership, or by levy on the estate of said William D. in the parcels of land aforesaid; and that said attachments may be dissolved, that a receiver may be appointed, that the said William D. may be required to join your orator in conveying to him all the aforesaid land, and all other property of said co-partnership, that he may be ordered to sell and dispose of the same, and out of the avails thereof to pay and discharge the debts of said co-partnership, and the balance to pay over as this honorable Court shall

direct; and that your orator may have such further relief in the premises as the nature of his case may require, and to your honors shall seem meet and proper.

William D. Crooker did not appear; and a portion only of the parties named as plaintiffs in the several suits at law appeared. Such as had entered their appearance on the docket filed general demurrers to the bill; and, at April Term, 1858, MAY, J., ruled *pro forma* that the demurrers be sustained and the bill be dismissed. Plaintiff thereupon *excepted.*

*Bradbury, Morrill & Meserve,* and *Rogers,* for the plaintiff, argued in support of the exceptions: —

A general demurrer admits the facts stated in the bill to be true; and, being true, do they authorize the Court to grant the relief asked for?

The facts, being thus admitted, show the case to be within the jurisdiction of the Court. It is a case of partnership, and between part owners of vessels and certain real property; and is brought for a settlement of partnership accounts and matters. R. S. c. 77, § 8; 19 Maine, 211; 24 Maine, 322; 4 Met. 540.

The relief prayed for is virtually the marshalling the assets of the company between its creditors, and the creditors of one of the partners, the assets not being enough to satisfy both.

The defendants are the creditors of W. D. Crooker, in his individual capacity, and not as a partner, and are endeavoring to satisfy their debts out of the company property, while the company are largely in debt and their affairs unsettled.

The case comes, therefore, within the jurisdiction of a court of equity.

The whole interest of W. D. Crooker in the company property will be absorbed in the payment of his separate debts, and will thus leave the whole company indebtedness to be paid by this plaintiff.

The *creditors of the company* have a right to the company

property to pay their claims, and this right is superior to any claim which the creditors of the individual members of the firm may have upon it for the payment of their debts. *Commercial Bank* v. *Wilkins,* 9 Greenl. 28; Story's Equity, § 1253, p. 500; *Thompson* v. *Lewis,* 34 Maine, 167; 3 Paige's Ch. R. (N. Y.) 518; Story on Part. § 376, 377, 382; *Allen* v. *Wills,* 22 Pick. 450, 452–3; 2 McCord's Ch. R. (S. C.) 302.

The plaintiff asks that a receiver may be appointed to take charge of the company property, and, out of the proceeds thereof, to pay the company debts, and the balance to pay over as the Court shall direct.

He further asks that, in the meantime, the defendants may be restrained from satisfying their executions out of the company property, and that their attachments may be dissolved.

He alleges that he has no adequate remedy at law; and it cannot be pretended, that he has any remedy for the great injury which will fall upon himself, unless it is by a bill in equity. There is no process at law that will afford relief. *Kennedy* v. *McFaddon,* 3 Har. & Johns. (Md.) 194.

A bill in equity is the appropriate remedy. Story on Part. 470, and authorities above cited; *Cropper & al.* v. *Coburn & al.,* 2 Curtis' C. C. U. S. R. 465, and authorities there cited.

The complainant has a right to insist that the company property shall go to pay company debts. *Commercial Bank* v. *Wilkins,* 9 Maine, 28; *Smith* v. *Barker & al.,* 10 Maine, 458; 3 Kent, 74, note et sequel; Story on Contracts, § 359, p. 233; *Cropper & al.* v. *Coburn & al.,* 2 Curtis, 465, above cited; 4 Met. 542; 5 Met. 575.

If the parcels of land attached by the defendants, in their suits against W. D. Crooker, are partnership property, as we have assumed they are, there can be no ground for sustaining the demurrer.

That real estate purchased with partnership funds, for partnership purposes, constitutes partnership property, in equity, cannot now be questioned. This doctrine has been settled, upon the fullest and most thorough discussion, by the Courts of the several States, and is recognized by all the text writers

of authority. 3 Kent's Com. 37; Story on Contracts, 232, 233, and cases cited; Story on Part. § 92, p. 135.

In the case at bar, all the lands were purchased with the money and on the credit of the partnership, and for partnership purposes. They are all partnership property, and a court of equity will hold them as a fund for the payment of the partnership debts, in the first instance, allowing the creditors of the individual members of the firm, the surplus, if any, of their debtors' share of the proceeds thereof, after the payment of the company liabilities.

The whole subject of partnership property, in lands situated and held as these are, was fully discussed in a recent case in Massachusetts, and the doctrine laid down, as it is now claimed by us. *Fall River Whaling Co.* v. *Borden, assignee,* 10 Cush. 458. See, also, *Burnside & al.* v. *Merrick & al.,* 4 Met. 537; *Dyer* v. *Clark,* 5 Met. 562, and cases cited; *Howard & al.* v. *Priest & al.,* 5 Met. 582; *Peck* v. *Fisher,* 7 Cush. 386.

The doctrine is fully and ably discussed in these cases, and the conclusion of the Court the same in all.

*Barrows,* for the Union Bank: —

1. The principles and rules applicable to partnerships, and which govern and regulate the disposition of the partnership property, do not apply to real estate. This was settled by the Supreme Court of New York, in the case of *Coles* v. *Coles,* 15 Johns. 159, upon the strength of Lord Thurlow's opinion in *Thornton* v. *Dixon,* and of the opinion of the Master of the Rolls, in *Balman* v. *Shore,* 9 Vesey, 500.

In *Deloney* v. *Hutchinson,* 2 Rand. 183, the appropriation of partnership lands, as assets, to partnership debts in preference to other debts, was denied, and it was held that land purchased by partners for partnership purposes was an estate in common, both at law and in equity.

In *Blake* v. *Nutter,* 1 Appleton, 16, our own Court held, citing *Goodwin* v. *Richardson, Adm'r,* (in which 11 Mass. on page 475, the rationale of the opinion is made clearly to

appear,) that the superior right of partnership creditors over creditors of the individual partners, to real estate purchased with partnership funds, *for partnership purposes, and so used and enjoyed,* does not apply at common law, and it is doubted whether, in this State, a different rule would be adopted in equity.

2. In this State, (whatever may be the decisions in equity elsewhere,) the rule is the same in equity that prevails at the common law. No principle in equity can call upon this Court to give a construction to the title acquired by this complainant and his brother, to those parcels of real estate, that shall be in direct contravention of the express terms of the statutes of the State, which were in force when they acquired their title, and still continue to be the law of the State.

Statute of 1821, c. 35, § 1, provides, that lands conveyed to two or more persons, shall be held by them as tenants in common, and not as joint tenants, unless it is set forth in the conveyance that they are to hold jointly, or unless it contain other words clearly and manifestly showing that intention. This statute was in substance reënacted in the R. S. of 1841, c. 91, § 13, and, again, in R. S. of 1857, c. 73, § 7. It was doubtless competent for the complainant and his brother, if they had seen fit so to do, at the time they took the deeds, to have had it set forth in those conveyances, that they were to *hold jointly,* or to have used any " words clearly and manifestly showing their intention." *But they did not.* It is hard to conceive what equities can exist, *as between themselves,* which would require the Court to put a different construction upon the deeds under which they hold, from what the law puts upon them.

3. It is nowhere alleged in the bill that these defendants had either actual or constructive notice that this was partnership property. Setting aside the statute entirely, this alone would be fatal to this bill, for even in the strongest cases that the complainant's counsel can cite, such as *Edgar* v. *Donally,* 2 Munf. 387, and *Hoxie* v. *Carr,* the rights of purchasers and encumbrancers without notice are secured from being affected

by a claim of partnership rights, of which they were ignorant. Even where the equitable rights of partnership creditors to real estate are maintained in their broadest extent, and independent of any statute provision, it is held that, where lands are bought with partnership funds, and afterwards sold by the partner who has the legal title to the whole, or to a part, as tenant in common, neither the firm nor its creditors have any lien on the land, for partnership purposes, against a purchaser without notice or knowledge, where the deed to the partners did not describe them as members of a firm, or otherwise indicate the fact that the land was purchased as partnership property—the equity of which is obvious. *Forde* v. *Herron*, 4 Munford, 316; *McDermot* v. *Lawrence*, 7 Sergeant & Rawle, 438.

It is analogous to the case where there is a dormant partner. *French & al.* v. *Chase*, 6 Greenl. 166.

4. The bill is utterly vague and void for uncertainty. There is no allegation of the amount of partnership liabilities, or of the value of the partnership assets, from which it could be determined whether there was any necessity for the interference of the Court in equity. The complainant only alleges that, at the time of the dissolution, the " co-partnership was owing debts to a large amount," and then he alleges that he " has already been obliged to pay debts of said co-partnership to a large amount," from which two allegations taken together, perhaps the fair inference would be, that the partnership liabilities are now all discharged, an inference strengthened by the fact that no partnership creditor has thought it worth his while to interfere here; and it nowhere appears but what the complainant has been reimbursed out of the partnership property for the " large amount" which he says he has paid.

*Bronson*, for Lincoln Bank; Bath Mutual Marine Ins. Co.; and Hyde, Farrar & Co., defendants.

*Fessenden & Butler*, for Casco Bank, defendant.

The opinion of the Court was drawn up by

MAY, J.—As between the principal respondent, Wm. D. Crooker, and the orator, this is a case where the latter seeks, by his bill, to compel the adjustment of the affairs of a co-partnership of long standing between them, but which was dissolved June 19, 1854. The bill seeks to do this by causing the co-partnership property, both real and personal, to be applied, through the agency of a receiver, to the payment of the partnership debts. The said Wm. D. Crooker having failed, after notice to appear and answer, the bill is to be taken *pro confesso* as against him. The decree, however, to which the orator is entitled, cannot properly operate upon property, even though it belong to the co-partnership, in which other persons have acquired a better right or higher equities; and a receiver, if appointed, can only take the co-partnership effects as subject to all such superior claims.

Of the other numerous respondents, declared against in the bill, nine only have appeared. The others, upon whom due notice has been served, by neglecting to appear and answer, are properly to be regarded as consenting to such a decree against them as is sought in the bill.

The principal question, therefore, which arises, is whether those respondents who have appeared and filed their several demurrers to the bill, ought in equity, in view of all the facts alleged in the bill, and admitted by the demurrers, to be restrained in their legal efforts and attempts to satisfy certain judgments, which they have, or may hereafter obtain against the said Wm. D. Crooker for his sole debts, out of the parcels of land which are described in the bill and claimed as partnership property. The solution of this question depends upon the facts and the principles of equity jurisprudence applicable thereto.

The bill charges, that a co-partnership between Charles and Wm. D. Crooker was formed in 1826; that it was engaged from time to time in the buying and selling of merchandize, the building and sailing of ships, the cutting and marketing

of lumber, and other business; that it was dissolved in June, 1854; that, at the time of its dissolution, it was owing debts to a large amount, which are still outstanding and unpaid; that the assets of the co-partnership consist, mainly, of parts of certain ships, and of parcels of land, which were purchased on the credit, and with the moneys, of said co-partnership, but were conveyed to the said Charles and Wm. D. Crooker, their heirs and assigns, as tenants in common; that these respondents have caused the same lands to be attached upon their several writs against Wm. D. Crooker, for his private debts; and that these creditors of said Wm. D. have threatened, and said orator believes it to be their intention, to obtain satisfaction of the judgments which have been or may be rendered in said suits, by levying their executions upon the legal estate of said Wm. D. Crooker in said lands; and, further, that if said intention shall be carried into effect, one half of the assets of said co-partnership will be absorbed by the payment of the separate and individual debts of the said Wm. D. Crooker, and that the remainder and residue thereof will be utterly insufficient to pay and discharge the just debts and liabilities of said co-partnership. The bill further charges, that the said orator has already been obliged to pay debts of said co-partnership, to a large amount, out of his separate and individual property; and that he has repeatedly urged the said Wm. D. Crooker to come to a settlement with him, of the co-partnership accounts and dealings, and to join with him in selling the co-partnership property and paying the co-partnership debts; all which the said Wm. D. has neglected and refuses to do. Such are the admitted facts in the case.

In regard to the established principles of equity jurisprudence applicable to partnership property, it is now well settled that the creditors of a co-partnership, in case of insolvency, are to be deemed as having a priority of right to payment out of such property, which may be enforced before the claims of the creditors of a separate partner. The interest of the co-partnership in such property is joint, while each individual partner, as such, is entitled only to his share of

what may remain after the co-partnership debts are paid. This preference, being generally disregarded at law, can be effected only by means of the equity which the partners have over the whole funds. Story on Equity, vol. 1, § 675, and cases there cited; *Jackson* v. *Cornell*, 1 Sandf. Ch. R. 348; *Jarvis* v. *Brooks*, 3 Foster, 136; *Fall River Whaling Co. & als.* v. *Borden*, 10 Cush. 458; *Murrill* v. *Neill*, 8 How. 414; *Douglass & al.* v. *Winslow*, 20 Maine, 89; *Cropper & al.* v. *Coburn & al.* 2 Curtis, 465.

It is also true that each partner is regarded as having an equitable lien upon the whole partnership property for the payment of the partnership debts. *Commercial Bank* v. *Wilkins*, 9 Maine, 28. This lien, or, as it is sometimes more appropriately called, implied trust or pledge, reaches the whole partnership property, whether it consists of lands or stock or chattels or debts. Real estate, purchased with partnership funds and for partnership uses, is, for the purposes of equity, regarded as standing upon the same footing as personal estate. *Peck & al.* v. *Fisher*, 7 Cush. 386.

Each partner is entitled to regard the whole estate as held for his indemnity against the joint debts, and as security for the ultimate balance which may be due to him for his own share of the partnership effects. Story on Equity, vol. 2, § 1243; *Hoxie* v. *Carr*, 1 Sumner, 173; *Buchan* v. *Sumner*, 2 Barb. Ch. R. 198 – 199.

In relation to real estate, when it is a part of the partnership effects, it is to be treated in equity, to all intents and purposes, as a part of the partnership funds; and, whatever may be the form of the conveyance, it will be held subject to all the equitable rights and liens of the partners, which would apply to it if it were personal estate; and this rule prevails notwithstanding the legal title may, by the death of the particular party holding it, have been cast by descent upon his heirs at law. 1 Story's Eq., § 674, and cases there cited; *Dyer* v. *Clark*, 5 Met. 562. Such is the rule, also, notwithstanding the estate may have been conveyed to the partners by such a deed as, under our R. S. of 1841, c. 91, § 13, and the revision

of 1857, c. 73, § 7, would, at law, make them tenants in common. *Burnside* v. *Merrick*, 4 Met. 537; *Howard* v. *Priest*, 5 Met. 582; *Fall River Whaling Co. & als.* v. *Borden*, 10 Cush. 458, before cited. Nor does it make any difference that the deed contains no reference upon its face to the grantees as partners. *Tillinghast* v. *Champlin & al.*, 4 Ames' (R. I.) R. 173.

No reason is perceived why that same equity which may be invoked for the protection of a partner in cases of actual insolvency, may not also be successfully invoked in cases of threatened insolvency, when it is apparent from the facts that, unless the contemplated acts which are threatened are restrained, the result must be an *actual* insolvency. *Deveau* v. *Fowler*, 2 Paige's Ch. R. 400. In cases of this kind, we have no doubt that the equity powers of the Court may as properly be exercised to prevent a wrong, as for the purpose of making an equitable appropriation of such effects as may remain after the wrong has been perpetrated, or has in any way happened. As between these partners, then, we find no difficulty, upon the principles of general equity and the facts conceded in the case, in coming to the conclusion that the bill is well sustained; and, under our Revised Statutes of 1841, c. 96, § 10, and the revision of 1857, c. 77, § 8, by which equity jurisdiction is conferred upon this Court in all cases of partnership, the orator is well entitled, upon the facts, to a decree against the said William D. Crooker, such as is sought by the bill; and would be equally so entitled if the said William D. Crooker had appeared and demurred to the bill.

While such are the equitable rights and remedies which exist between Charles and William D. Crooker, as partners, and such the power of this Court to enforce these rights, as between them, it is equally clear, in view of the authorities which have been cited, and many others that might be, that, at law, the title to the real estate attached by the sole creditors of William D. Crooker, was in him at the time of the attachments. In fact, the bill admits that he was seized as tenant in common with said Charles Crooker, of the legal

estate in all the parcels of land which were attached. Nothing appears upon the face of the deeds conveying said lands to them, nor upon any record in the case, that said lands were in any way connected with the partnership affairs, or that they were paid for, or, when purchased, were to be paid for with partnership funds. No partnership lien or trust, even by implication, exists upon the face of the deeds, or any of them. The bill, however, charges that they were *in fact partnership assets*, and this is admitted by the demurrers in the case. Under such circumstances, the right of the creditors of William D. Crooker, at law, to attach, and levy their executions when obtained, upon his undivided moiety of these lands, in satisfaction of his private debts, cannot be questioned. *Blake* v. *Nutter*, 19 Maine, 16. " Whether a different rule should be adopted in equity in this State," says WESTON, C. J., in the case last cited, " the Court is not at present called upon to determine. When such a case arises in equity, it will be matter of grave consideration what effect the express terms of our statute is to have upon the question." The statute here referred to is that of 1821, c. 31, § 1, which is found to be, in substance, the same as our statute now in force, c. 73, § 7, and the statute of 1841, c. 91, § 13, both of which are before cited. The question, to which C. J. WESTON here alludes, has now arisen.

It is now contended by the several counsel in defence, for the first time in this State, that, notwithstanding the lands attached may, in fact, belong to the co-partnership, and may be needed for the payment of outstanding co-partnership debts and for any balance which may, upon the final adjustment of the affairs of the firm, be found to be due to either partner; and notwithstanding they may, in equity, as between these partners be treated as co-partnership assets; still the legal estate, being apparently held as the individual estate of each of these partners, and so appearing upon the records in the registry of deeds, is liable to attachment and levy upon execution by any judgment creditor of either partner, for his sole debts, to the extent of such partner's apparent legal interest

in the lands. It is said, that it would be manifestly unjust to allow partners to hold real estate in their own names and as their separate estate, and, upon the strength of such apparent ownership, to contract individual debts; and then to withhold from such individual creditors the right to attach and levy their executions upon the same lands which induced them to give individual credit, notwithstanding it may afterwards be made fully to appear that such lands were in fact a part of the co-partnership effects. There is, undoubtedly, great weight in the suggestion, and, if this were a question affecting in its application merely the rights of the partners, it would deserve the most serious consideration. The same objection would apply with equal force to the personal estate of the co-partnership, when it should happen to be in the possession of one of the partners, such possession being, by law, *prima facie* evidence of title in such partner, and thereby furnishing an apparent basis for individual credit. It would, therefore, be equally unjust to restrain the creditor of the individual partner from satisfying his debt out of the personal estate of the firm, when so held, before the implied trust which the partnership relation creates has been discharged.

But so long as the partnership debts are unpaid, and the partners severally have a right to have the partnership property appropriated for the purposes of the co-partnership, and the fulfillment of such obligations as necessarily spring from that relation, if all or either of the partners have the sole custody or legal title in them of any property, which, in equity, belongs to the co-partnership, there is, as all the authorities show, a resulting trust in relation to such property, which, under appropriate circumstances, may be enforced by any particular member or by the creditors of the firm, the latter working out their security through the equities of such member. It is this trust which this Court, sitting as a Court of equity, will enforce; and no reason is suggested or perceived why tenants in common, whether made so by force of the statute or otherwise, may not take an estate in trust, where the trust results from implication of law, as well as

any other grantee. Giving, therefore, to the statute, the whole force which is claimed for it in defence, we find nothing in its language or purpose to cut off the equities resulting from any of the conveyances to which it relates.

Whenever, therefore, there is, as in the case before us, a resulting trust in favor of any person or persons, growing out of any conveyance of partnership property, whether it be made in severalty or to tenants in common, such trust will be respected and enforced in the same manner as similar trusts in other cases, notwithstanding the record may show an absolute legal title in the grantee, unless the estate has been alienated in such a way by the trustee as to cut off the trust, or unless the law has, in some other mode, provided for its extinguishment. So long as such trust exists in relation to the partnership property, where the co-partnership is insolvent, or evidently to be made so by a levy upon the property, a judgment creditor of one of the partners in the firm cannot levy his execution, except upon the contingent interest of such partner in the partnership effects. *Smith* v. *Barker & al.* 10 Maine, 458. This rule is, in itself, so proper, so advantageous to commercial interests, and so conducive to the safety of creditors and persons entering into the partnership relation, and so much in accordance with natural justice, that it ought not to be broken in upon for slight reasons.

Do then our statutes, in relation to the attachment and levy of executions upon real estate, so far affect the rights of the *cestuis que trust*, in cases such as we are considering, that a creditor, who has legally attached such estate as the property of the trustee, acquires, by force of his attachment and the record title of the land, a better right or higher equity than the *cestuis que trust* possess ? In other words, does such a creditor, by his proceedings, acquire such a right to proceed and complete his levy upon the legal interest of the trustee, for his sole debt, that the Court is thereby deprived of all power to compel the execution of the original trust ? Ordinarily the attachment of property, whether personal or real, in which the debtor has the legal interest, creates a lien which

the attaching creditor may enforce as against all other persons. It is so in all cases, at law, where there are no outstanding equities which a court of general equity will enforce, and where the party making the attachment has no notice of any defect in the debtor's title, at the time when the attachment is made. Thus, where goods are attached while in the hands of a fraudulent purchaser, by a creditor ignorant of the fraud, and before the vendor has exercised the right which the law gives him of rescinding the contract of sale within a reasonable time after the discovery of the fraud, such creditor will be upheld in his right to levy upon the goods, even as against the defrauded vendor. The reason is, because the rights of both parties depend upon the law, and upon the law alone. So, too, in cases where there is an attachment of real estate, which the debtor has conveyed, and the deed of the grantee has not been recorded, the creditor, if he had no actual notice, at the time of the attachment, of the conveyance, will be legally entitled to levy upon such estate notwithstanding the claims of the grantee.

On the other hand, where there are outstanding equities or trusts, which a court of equity will enforce, the attaching creditor is not regarded as acquiring, by force of his attachment, merely, any right which is in its nature higher than the equitable rights which exist. These will be regarded as subsisting until the attachment is perfected by a judgment and levy, notwithstanding the creditor may have had no knowledge of their existence when his attachment was made. Thus, in cases of foreign attachment, when the funds in the hands of the trustee have been equitably assigned, prior to the service of the writ, even though both the creditor and the trustee were in fact then ignorant of the assignment, still such funds will be protected against the attachment, upon notice from the assignee to the trustee, being stated in his disclosure, at any time before judgment; and the reason is, because the outstanding equities are regarded as higher in their nature than the legal estate.

The provisions of the present statute in relation to trusts,

Crooker *v.* Crooker.

c. 73, § 12, and the R. S. of 1841, c. 91, § 32, may also be regarded as having an important bearing upon this question. By the present statute it is provided, that " the title of a purchaser for a valuable consideration, or a title derived *from levy of an execution,* cannot be defeated by a trust, however declared or implied by law, unless the purchaser or creditor had notice thereof." The statute of 1841, just cited, though different in its phraseology, when taken together, was evidently intended to convey the same meaning as the present revision. By these statutes there is a strong implication that a trust, whether declared by some instrument in writing, or, as in the present case, implied by law, will not be cut off except by *a sale of the estate or a levy upon execution.*

In the case of a creditor without notice of the trust, it is the levy, and not the attachment, which gives him protection against the trust. The respondents, therefore, by virtue of their attachments, have acquired no such rights in the lands, which we find, in view of the facts, to be held by Charles and Wm. D. Crooker as tenants in common, in trust for the partnership purposes, as can properly prevent this Court, when sitting as a court of equity, from interposing to protect the orator, and, through him, the partnership creditors, against an appropriation of the partnership property which will be to their injury, and in violation of the trust; and this rule, we think, is in harmony with the principles of general equity. 3 Kent's Com. 65; *Evans* v. *Chism & al.,* 18 Maine, 220.

In the case of the *Commercial Bank* v. *Wilkins,* before cited, the outstanding equities of a co-partnership and its creditors were held to be a justification to an officer for not selling upon execution, personal estate, which had been attached by such officer at the suit of a creditor of one of the partners. Why, then, should not equity intervene to prevent a misappropriation of such property to the injury of any partner or the creditors of the firm?

That, in such cases, the equities springing out of the co-partnership are superior, and properly held " to bear down the letter of the law," when invoked at any time before the

sale of the property has taken place, upon the execution against the individual partner, seems to have been settled in the case of *Thompson* v. *Lewis & trustee,* 27 Maine, 167.

No reason is perceived why the same rule should not be extended to real estate. It is the law of other States. In the case of *Peck & al.* v. *Fisher,* 7 Cush. 386, before cited, the contest related to the title to real estate, which had been held by two partners, as tenants in common, and levied upon as the individual property of such partners; and then, subsequently, for a partnership debt. The action was a writ of entry, and it appeared that the creditors of the individual partners held, or claimed to hold, by the earliest attachment. But, notwithstanding such creditors had an indefeasible title at law, which might be defeated in equity, and, as it was understood an equity suit was pending, the Court suspended the case to await the result of that suit.

So, in New Hampshire, a subsequent attachment by the creditors of a firm overrides the earlier attachment of a creditor of one of the members of the firm. *Tappan* v. *Blaisdell,* 5 N. H., 190; and, in the case of *Jarvis & al., Adm'rs,* v. *Brooks & al.,* 7 Foster, 37, the facts are found to be, in many respects, very similar to the facts in the case now before us, and yet it was held that a levy upon real estate belonging to a co-partnership, and held by its individual members as tenants in common, in trust, not by deed upon its face, but by implication of law, for the firm and its creditors, was valid against a prior attachment of the same property, as the individual property of the separate members of the firm. " The partnership creditors, having precedence, nothing more is requisite than that they should have a valid execution properly levied, in order to avail themselves of their right of priority, and this follows as a necessary result of the principle, that their claim is superior to that of the creditors of the individual members of the firm." No rights were therefore acquired by the previous attachment which was not defeated by the subsequent levy made by the creditors of the firm. If such a levy would protect the rights of the partnership cred-

itors, no reason is perceived why the same rights, and the rights of the moving partner, may not be protected in the equity suit before us.

In the case of *Tillinghast* v. *Champlin & als.*, before cited from the Rhode Island Reports, AMES, C. J., while treating of the equitable lien which is created upon partnership property, in favor of partners and co-partnership creditors, in a case where the deed was precisely like the deeds before us, a deed to the partners, as tenants in common, and contained no reference to their relation as partners, says, " this lien is, we think, familiarly administered in equity, in favor of those respectively entitled to it, upon their own direct application, and as their own equitable right. Even the courts of law administer it in New England, under our attachment laws, in case of *quasi* insolvency, by giving to the creditor of the firm, though *subsequently* attaching the firm property, a priority of lien and payment upon and out of such property, over the separate creditor of one of the co-partners *first* attaching it, thus setting aside the legal right of prior attachment in favor of the equitable lien of the co-partnership creditors, upon the co-partnership property.

In view of our statute authorizing the attachment of real estate, we do not think it was intended, when taken in connection with the statute for the protection of trust estates, resulting from implication, which has been cited, to overthrow and destroy the equitable rights arising therefrom, provided the *cestuis que trust* took the proper steps to secure their rights before a levy upon execution.

Thus we are brought to the conclusion that the equities which attach to partnership property, whether personal or real, are not absorbed in the legal estate, until such property has been transferred to a *bona fide* holder, ignorant of the trust, either by a sale or upon execution. Equity will therefore enjoin or restrain the appropriation of such property to the payment of the debts of an individual partner, until the partnership debts are paid, and the indemnity to which the other parties are entitled is obtained, and the attaching cred-

Crooker *v.* Crooker.

itors in this case cannot hold by virtue of their attachments, until the equities springing out of the partnership relation are satisfied. But this contingent interest may be protected for them by an appropriate decree.

The other objections to the bill, such as want of due diligence, and certainty in its allegations, in the judgment of the Court, are not sustained. The result is that, upon the facts as stated, the orator is entitled to a decree, not only as against his co-partner, Wm. D. Crooker, but also against the attaching creditors, named as respondents in the bill, to be made in accordance with the principles of equity before stated; and the exceptions which are taken to the *pro forma* rulings of the presiding Judge at *Nisi Prius*, all of which were made without examination, and only for the purpose of presenting such questions of law and equity as might arise in the case, to the full Court, are sustained; and the case is remanded to the Court within and for the county of Sagadahoc, where the respondents whose demurrers have been overruled, can answer further if they shall desire.

*Exceptions sustained.*

TENNEY, C. J., and RICE, GOODENOW, and DAVIS, J. J., concurred.