McMillan *et al. v.* Hadley *et al.*

---

No. 8370.

McMILLAN ET AL. *v.* HADLEY ET AL.

PARTNERSHIP.—*Real Estate.—Conveyance.—Sheriff's Sale.—Tenants in Common.—Notice.—*A conveyance to two, by deed in the usual form, vests in

McMillan *et al. v.* Hadley *et al.*

each of the grantees the legal estate to an undivided half as tenant in common (section 2922, R. S. 1881), and if, in fact, the grantees be partners, and the estate partnership property, yet a *bona fide* purchaser at sheriff's sale upon execution against one of the grantees, without notice of the fact, will hold title to the moiety, against partnership creditors seeking to subject it to their demands.

SAME.—*Instruction.*—*Jury.*—*Practice.*—In such a case, an instruction which does not leave to the jury the question of notice to such purchaser at sheriff's sale, is erroneous.

From the Clay Circuit Court.

*G. A. Knight, C. H. Knight* and *W. P. Blair*, for appellants. *W. W. Carter* and *S. D. Coffey,* for appellees.

NEWCOMB, C.—The appellees, Hadley and Willoughby, sued to foreclose a mortgage executed to them by Jacob Thomas and Isaac W. Sanders.

Among the defendants was Robert M. Wingate, the ancestor of the appellants, who has died since the judgment, and this appeal is prosecuted by his heirs.

The complaint alleged that the note secured by the mortgage was a partnership debt; that it was given for money borrowed to make a payment on said land, purchased by Thomas and Sanders as partners, and that said land was held by them as partners.

Wingate filed an answer and cross complaint, alleging that he was the owner of one-half the land by virtue of a sheriff's sale of Thomas's half of the land, and a deed made pursuant to such sale; and that he held by assignment several certificates of purchase of the interest of Sanders in said land, executed by the sheriff of Clay county pursuant to sales made by him on certain executions against said Sanders, issued upon judgments which were prior liens to the mortgage of the plaintiffs. A denial was filed to the answer and cross complaint. The cause was then tried by a jury, which found a general verdict for the plaintiffs, and specially, in answer to interrogatories, that the debt sued upon was a partnership debt of Thomas & Sanders, and that the mortgaged land was their partnership property. Various exceptions were reserved by the de-

fendant Wingate upon the trial, which, as well as the over-ruling of his motion for a new trial, were properly saved by bills of exception.

The evidence gives the following history of the facts on which the parties respectively base their claims to the land in controversy, namely :

That Thomas & Sanders purchased said land and took a title bond therefor in their individual names, August 13th, 1873. This was followed by a deed to them, September 18th, 1873. The deed was to Jacob Thomas and Isaac W. Sanders, in the ordinary form, there being nothing to indicate that they purchased as partners. The purchasers had no joint fund, but each paid one-half of the purchase-money from his own means, so far as payment was made at the dates of the purchase and the deed. On February 16th, 1874, Thomas & Sanders borrowed of the plaintiffs $1,000, to make a payment of that amount upon said real estate, and executed their joint note, signed in their individual names therefor; and on November 23d, 1877, they, with their wives, executed the mortgage in question to secure the payment of said note to the plaintiffs. This land was pur-chased by Thomas & Sanders with a view to lay it out into lots as an addition to the town of Brazil, and they prepared a plat of the same, but the plat was never acknowledged or re-corded, and the anticipated speculation proved a failure.

This land was the only property ever owned by Thomas & Sanders, either jointly or in common.

Wingate claimed under the following judgments and sher-iff's sales:

Judgment of Austin W. Knight v. Jacob Thomas, rendered May 29th, 1877. Sale of Thomas's undivided half of the land in controversy, by virtue of an execution issued on said judgment, January 11th, 1879, to Robert M. Wingate for $474.61, who received a certificate of purchase from the sheriff.

Judgment in favor of Wm. Burrick v. Isaac W. Sanders, rendered June 8th, 1875. The sheriff's certificate of pur-chase was issued to Charles H. Knight, on sale of Sanders's

undivided half of said land to satisfy this judgment, January 19th, 1878, and the certificate was assigned to Wingate, December 9th, 1878. The bid at the sheriff's sale was $276.33. Judgment of Andrew Wallace *et al.* v. Sanders, rendered June 8th, 1877. Sheriff's certificate of purchase on same was issued to Joseph M. Wallace, May 25th, 1878, and by him assigned to Wingate, December 9th, 1878. Bid at sheriff's sale, $279.

Judgment of Charles S. Andrews v. Sanders, rendered June 27th, 1877. Execution sale to Robert L. Keith, February 22d, 1878, for $405.05. Certificate of purchase assigned to Wingate, May 9th, 1878. A sheriff's deed was duly issued to Wingate on his purchase of Thomas's share of the land on the Austin W. Knight execution. This foreclosure proceeding was commenced March 15th, 1879.

On these facts and the finding of the jury that Thomas & Sanders owned the land as partners, and that the note to plaintiffs was their partnership debt, the plaintiffs claim that as such partnership creditors they are entitled to satisfaction out of the partnership property in preference to the judgment creditors of Thomas and Sanders individually.

On the other hand, it is claimed for Wingate that he and his assignors were purchasers for value, without any notice of said alleged partnership, and that he consequently had the better title.

The law is well settled, as a general rule, in this State, that partnership creditors are entitled to preference in the payment of their claims out of the proceeds of partnership property, and that creditors of the individul partners are entitled only to so much as would be the distributive portion of the debtor partner on a final winding up of the partnership. *Matlock* v. *Matlock,* 5 Ind. 403; *Kistner* v. *Sindlinger,* 33 Ind. 114; *Coffin* v. *Mitchell,* 34 Ind. 293; *Smith* v. *Evans,* 37 Ind. 526; *Huston* v. *Neil,* 41 Ind. 504; *Donellan* v. *Hardy,* 57 Ind. 393; *Meridian National Bank* v. *Brandt,* 51 Ind. 56; *Conant* v. *Frary,* 49 Ind. 530.

But this, like most general rules, is subject to qualification, and is not to be enforced against parties having the legal estate and equal equities. Thus, where the apparent title is in one member of a partnership, and a purchaser from him is ignorant that it is partnership property, such purchaser will hold against the other partners and the partnership creditors. 1 Washburn Real Prop. 667–669; 3 Kent's Com. p. 38. So, when the estate is apparently a tenancy in common, though in fact it is partnership property, one partner may convey a good title to his apparent share as a tenant in common, to a *bona fide* purchaser. On this point, FIELD, C. J., said, in *Dupuy* v. *Leavenworth*, 17 Cal. 263, that " the real property of a copartnership may be conveyed by one partner, on his individual account, to the extent of his legal title, so as to cut off the equitable rights of the copartnership, or its liability to the payment of the copartnership debts. A *bona fide* purchaser, for a valuable consideration, without notice of the partnership character of the property, will take the title in such cases, freed from the equitable claims of others, upon grounds of the highest policy." See, also, *Crooker* v. *Crooker*, 46 Me. 250; *Hoxie* v. *Carr*, 1 Sumn. 173; *Forde* v. *Herron*, 4 Munf. 316; *Buck* v. *Winn*, 11 B. Mon. 320; *Johnson* v. *Clark*, 18 Kan. 157; *Hogle* v. *Lowe*, 12 Nev. 286; *Van Slyck* v. *Skinner*, 41 Mich. 186; *Hiscock* v. *Phelps*, 49 N. Y. 97; *Lewis* v. *Anderson*, 20 Ohio St. 281; *Meridian Nat. Bank* v. *Brandt*, 51 Ind. 56; *Parker* v. *Bowles*, 57 N. H. 491.

Chapter 82 of the Revised Statutes (1 R. S. 1876, p. 361) contains the following provisions:

"Sec. 7. All conveyances and devises of lands, or of any interest therein, made to two or more persons, except as provided in the next following section, shall be construed to create estates in common and not in joint tenancy; unless it shall be expressed therein that the grantees or devisees shall hold the same in joint tenancy and to the survivor of them, or it shall manifestly appear, from the tenor of the instrument, that it was intended to create an estate in joint tenancy.

"Sec. 8. The preceding section shall not apply to mortgages, nor to conveyances in trust, nor when made to husband and wife; and every estate vested in executors, or trustees as such, shall be held by them in joint tenancy."

By this statute, the effect of the deed to Thomas and Sanders was to vest in each of them the legal title to an undivided half of the premises as tenants in common. As such, either could sell and convey a good title to his moiety, or it could be levied upon and sold to satisfy judgments and executions against him. These legal rights and liabilities might indeed be qualified by the owners actually making the land partnership assets, in which case it would become subject to the usual equities attaching to partnership property, as between the partners and between them and their creditors, and as to purchasers from the individual partners, with notice of the partnership character of the property.

The separate judgments against Thomas and Sanders became liens from the date of rendition on their respective legal estates in the land; and a *bona fide* purchaser at sheriff's sale of their individual interests, without notice of any change from the statutory *status* of the title, would acquire the legal title as it existed at the date of the judgment, irrespective of partnership equities of which he had no notice.

A general judgment lien is subject to the equitable rights of third parties, so long as it remains a mere lien; but, if such equitable rights are not asserted before a sale on execution, they must yield to the title of a *bona fide* purchaser under the execution. *Gifford* v. *Bennett,* 75 Ind. 528; *Rooker* v. *Rooker,* 75 Ind. 571; *Milner* v. *Hyland,* 77 Ind. 458.

It was, therefore, a vital question in the case, whether Wingate, when he purchased under the Burrick judgment and execution, knew or had notice that the land was in fact partnership property; and whether the purchasers, under the several executions against Sanders, had such notice, and, if they had, whether Wingate had notice when he bought and took assignments of their certificates of purchase. If said assign-

ors bought, and paid their money without such notice, their assignee, Wingate, would be protected by the *bona fides* of their purchases, although he may have had notice.   *McShirley* v. *Birt*, 44 Ind. 382; *Etzler* v. *Evans*, 61 Ind. 56; 2 Sugden Vendors, 8th Am. ed., 522; Story Eq., secs. 409–410.

The court, at the instance of the plaintiffs, gave to the jury the following instruction:

" 6th.   The claim of the defendant Wingate to the property described in the complaint is based on what is called judicial sales.   A purchaser at a judicial sale acquires no greater rights than the owner of the property sold had in it.   And if you find from the evidence in the cause that the property described in the complaint was the partnership property of Thomas & Sanders, and that the debt now in suit is their partnership debt, then the sale to Wingate did not cut out the rights of the plaintiffs to have said note paid out of said property, in preference to the individual claims against Sanders and Thomas, and the plaintiffs may enforce such right against the property in the hands of Wingate to the same extent they might enforce the same if Sanders and Thomas still held it."

According to the authorities to which we have referred, this instruction was too broad.   It ignored the question of notice of the plaintiffs' alleged equities to the purchasers at the sheriff's sales, and left but two questions for the jury to pass upon, namely, whether the land was in fact partnership property, and whether the debt sued for was a partnership debt.   Some evidence was given by the plaintiffs tending to show that Wingate had notice that Thomas and Sanders held the land as partners, and counter evidence was given on that subject on behalf of Wingate.   Whether he had such notice was a question for the jury, but the court took that question from them and virtually instructed them to find a verdict without reference to it.

We think, from an examination of the evidence, that the verdict was the result of the instruction above quoted.   It follows, therefore, that the judgment ought to be reversed, and the cause be remanded for a new trial.

Various other alleged errors have been discussed by counsel, but as they relate to rulings on the trial that may not again occur, we do not deem it necessary to consider them.

PER CURIAM.—It is therefore ordered, on the foregoing opinion, that the judgment below be, and the same is in all things hereby, reversed, at the costs of the appellees Asa Hadley and John Willoughby, and that said cause be remanded to the Clay Circuit Court, with instructions to grant the appellants a new trial, and for further proceedings in accordance with said opinion.