EWART, *Interpleader*, *Appellant*, v. NAVE–McCORD MER-CANTILE COMPANY.

### Division One, July 9, 1895.

1. **Partnership:** FIRM PROPERTY, TRANSFER OF. Partnership property is under the control of the partners and they have the power to appropriate it to secure their individual debts; they can waive their equities through which alone the firm creditors have their right to preference. On the other hand one partner has no severable interest in the firm property which he can transfer absolutely by individual assignment.

2. ————: FIRM PROPERTY: MORTGAGE BY INDIVIDUAL PARTNER. A mortgage of his interest in firm property by one partner to secure his individual debt does not abridge the right of creditors to subject such property to firm debts.

---

*Appeal from De Kalb Circuit Court.*

AFFIRMED.

*S. G. Loring* for appellant.

(1)   The court erred in refusing the instruction prayed for by interpleader.   Under the law, Ewart immediately became the absolute owner of said undivided one half of said stock of goods; Meek had no interest therein on the thirteenth day of January, 1888, that was liable to be seized, either under attachment or execution.   Jones on Chattel Mortgages [2 Ed.], sec. 699; *Jackson v. Cunningham*, 28 Mo. App. 354; *Barnett v. Timberlake*, 57 Mo. 499; *Sheble v. Curdt*, 57 Mo.; *Robinson v. Campbell*, 8 Mo. 366; *King v. Bailey*, 8 Mo. 240; *Lacy v. Gibony*, 36 Mo. 320.   (2)   There is no evidence in the case that the partnership existing between Meek and Atterbury was other than that at will. The execution of the mortgage to Ewart, and an immediate breach of the conditions, and especially upon his taking possession of the mortgaged property, operated as an absolute dissolution of the firm of Meek & Atterbury.   Lindley on Partnership [Ewell, 2 Ed.], bottom page 1280.   (3)   The ordinary creditors of a firm have no lien on the property of the firm before obtaining judgment and execution, so as to be able to prevent it from parting with that property to whomsoever ·it chooses. 1 Lindley on Partnership [Ewell, 2 Ed.], side page 335.   (4)   But can only be subrogated to the lien of the parties, and are therefore without remedy when such lien has been waived by them.   *Kirkpatrick v. Flannegan*, 106 U. S. 648; *Case v. Beauregard*, 99 U. S. 119.

VOL. 130 mo—8

*Kendall B. Randolph* for respondent.

The record shows that the supreme court has no jurisdiction of the cause, for the reason that the amount involved is less than $2,500.

MACFARLANE, J.—On the fourteenth day of January, 1888, respondent, a corporation, commenced a suit by attachment in the circuit court of DeKalb county against Green Atterbury and William L. Meek as copartners under the name and style of Meek & Atterbury. On the same day a stock of goods was levied upon under the writ of attachment issued therein. At the October term of said court appellant filed an interplea in said suit. At the April term, 1893, an amended or supplemental interplea was filed, by which interpleader claimed the property so levied upon by the sheriff. Respondent answered the interplea denying the ownership of the goods by interpleader.

It appeared by the evidence on the trial that in 1885 Meek bought of one Dixon a half interest in a stock of goods owned by said Dixon and one Lipscomb and gave his notes for a portion of the purchase money. Dixon was at the time indebted to the interpleader to whom the notes were assigned in settlement of that indebtedness. During the same year Lipscomb sold his interest in the goods to Atterbury. Thereafter a mercantile business was carried on by Meek & Atterbury, each having a half interest therein. On the twenty-third day of October, 1886, Meek executed and delivered to interpleader a note for $2,538, the amount then due on the notes previously given by Dixon. The original notes were canceled, and this new note was given in lieu of them.

On the eleventh day of January, 1888, in order to secure this note, Meek executed and delivered to interpleader a mortgage purporting to assign his half interest in the stock of goods then in the business of said firm. The deed contained the condition that "in case default was made in the payment of the debt above mentioned, or any part thereof, or of the interest due thereon, on any day when the same ought to be paid, then the whole sum shall, at the election of the said James Ewart, become immediately due and payable.

The deed contained this further provision: "The property hereby conveyed to remain in my possession until default be made in the payment of said debt and interest, or some part thereof. Until default be made in the payment of the aforesaid note, the said party of the first part is to remain and continue in the quiet and peaceable possession of said goods and chattels, and in the full and free enjoyment of the same, and, until demand be made, the possession of the party of the first part, Wm. L. Meek, shall be deemed and taken as the possession of, and as agent and servant for the sole and exclusive benefit and advantage of his principal, the said James Ewart. The said party of the first part, the said Wm. L. Meek, is to have the right to sell the said property in the ordinary course of retail trade, and shall account for and pay over to the said James Ewart, all the proceeds of such sale on and in payment of said note, the said James Ewart retaining to himself the right to take possession of said property at any time he shall see fit. Upon taking possession of said property, or any part thereof, either in case of default, or as above provided, the said James Ewart, or his legal representative, may proceed to sell the same, or any part thereof, either at said store, in the ordinary course of the retail trade, or may sell at public auction to the highest bidder, for

cash, at said store, in the city of Maysville, county of De Kalb, and state of Missouri, first having given twenty days' notice," etc. The deed was duly acknowledged and recorded on the day of its execution.

On the next day, January 12, 1888, the said Atterbury executed a deed of trust, purporting to assign his individual half of the goods to E. S. Lowe as trustee to to secure certain individual indebtedness of himself amounting to about $2,000. This deed contained in substance, the same conditions and provisions as the one made by Meek, and was also duly acknowledged and recorded. No actual fraud in the execution of the deed of trust was shown.

Interpleader testified that, after the mortgage had been recorded, and on the same day, he went over to the store and took possession of said undivided one half of said stock of goods, and made arrangements with said Meek to take charge of his interest in the store until he could make other arrangements with the goods; that he gave both said Meek and Atterbury orders not to receive any goods into the store; that when he went to said store with Meek, to take possession, he told said Atterbury that he had taken a mortgage upon Meek's undivided one half of said stock of goods and that Meek would look after his interest, and Atterbury said, "All right;" he then gave directions as to the management of the business; on the following day he and Atterbury commenced dividing said stock of goods, and continued dividing them until they were taken out of their possession by the sheriff, on the thirteenth day of January, 1888, acting under the authority of the writ in the attachment suits. There was no contradictory evidence.

Under the evidence the court refused to instruct the jury on request of interpleader that at the time of the levy of the writs of attachment, Meek and Atterbury

had no attachable interest in the goods, and the verdict should be for interpleader. The court thereupon instructed the jury to find for the plaintiff in the attachment suit. Judgment was rendered for plaintiff, and interpleader appealed.

The simple and only question, as we view this record, is whether the mortgage by Meek of his individual interest in the partnership property of the firm of Meek and Atterbury had the effect of placing it beyond the reach of the creditors of said firm. No question of the good faith of the parties in making and accepting the mortgage need enter into the discussion.

The assets of a partnership are held by the firm for the benefit of its individual members and its creditors· The individual partners have only an interest in what remains of the partnership property after the firm debts have been paid and the equities of the partners among themselves have been adjusted. He has no several right to any specific part of the property or interest therein. The *corpus* is joint property. A sale or assignment of his interest, therefore, must be subject to the paramount rights of existing firm creditors and the equities of the partners.

The mortgage of interpleader could have no greater effect. It created no lien on existing property of the firm which could prevent the partners from disposing of it for the purpose of settling the partnership affairs, though its effect may have been to dissolve the partnership. Nor could it abridge the rights of the creditors of the firm to go upon the property for the satisfaction of their debts. These principles are well settled. *DuPont v. McLaran*, 61 Mo. 508; *Bank of Clinton v. Brenneisen*, 97 Mo. 150; *Wiles v. Maddox*, 26 Mo. 77; Jones on Chat. Mortgages, sec. 45; Bates on Partnership, sec. 184; *Thompson v. Spittle*, 102 Mass. 210; *Monroe v. Hamilton*, 60 Ala. 232; *Smith v. Andrews*, 49 Ill. 28;

*Tarbell v. West,* 86 N. Y. 287; *Deeter v. Sellers,* 102 Ind. 458; *Receivers v. Godwin,* 5 N. J. Eq. 334.

The principles involved here bear no analogy to those in cases relied upon by appellant, in which all the partners join in transferring the property of a partnership in satisfaction of, or as securty for, the individual debt of one member of the firm, in preference to firm creditors, of which *Sexton v. Anderson,* 95 Mo. 381, is a type. The partnership property is under the control of the partners and they have the power to appropriate it to secure their individual debts. They can waive their equities through which alone the firm creditors secure their right to preference.

On the other hand, one partner has no severable interest in the property which he can transfer absolutely by individual assignment. The mortgage, on its face, shows that it was not intended as a partnership transaction but is that of Meek alone. The interest which he attempted to transfer was his undivided interest and nothing more. The fact that Atterbury, on being informed of the mortgage, made no objection did not change the effect of the deed, and convert it into a firm transaction. Indeed it is evident that such was not the intention of the parties from the fact that Atterbury at once executed a deed of trust on his interest for the purpose of securing his individual debts.

The mortgage under which interpleader claims can only be held to have the effect of transferring to him the rights Meek himself would have had to the surplus after the firm debts were paid. Judgment affirmed. All concur; BARCLAY, J., in the result.