Johnson et al. *v.* Shirley, Assignee, et al.

[No. 18,586.   Filed April 19, 1899.]

Partnership.—*Mortgage by Individual Partner.—Extent of Lien.— Rights of Firm Creditors.* — A mortgage executed by one partner on his undivided one-half of the partnership property for the purpose of securing his individual antecedent debt, by and with the consent of his co-partner, does not attach to the *corpus* of the partnership property, but only to the mortgaging partner's interest in the surplus remaining after the payment of the firm debts.

From the Boone Circuit Court.   *Affirmed.*

*Patrick H. Dutch* and *Winton A. Dutch,* for appellants.

*A. J. Shelby, S. R. Artman, T. J. Terhune* and *Ralston & Keefe,* for appellees.

Jordan, J.—On and prior to the 12th day of December,

1896, William S. Jett and George W. Johnson were equal partners engaged as merchants in the sale of hardware and implements at Lebanon, Indiana, under the firm name of "Jett & Johnson." On that day, the firm being insolvent, these partners made a voluntary assignment of its assets and property to the appellee, George C. Shirley, under the provisions of the insolvent laws, for the benefit of all of the creditors of said firm. The deed of assignment was duly recorded on that day, and appellee, as the trustee thereunder, assumed and entered upon the discharge of the duties of said trust. On the 11th day of December, 1896, George W. Johnson executed to appellant, his wife, a chattel mortgage upon the undivided one-half interest in this stock of hardware and implements. On the same day he also executed a chattel mortgage upon the same interest to his brother, James M. Johnson, a co-appellant herein. Both of these instruments were executed to secure antecedent debts owing by said mortgagor in his individual capacity, such debts being in no manner liabilities against the firm of Jett & Johnson. The mortgages were duly recorded on the 12th day of December, 1896, in the recorder's office of Boone county, Indiana. The debts secured by these mortgages aggregate $3,306. The mortgages upon their face, do not purport to be executed by the firm of Jett & Johnson, nor is there anything therein to indicate or show that they have any connection whatever therewith. They each recite that George W. Johnson, of Boone county, Indiana, etc., does "hereby sell and convey" to the mortgagee therein named "the goods and chattels described as follows, to wit: The undivided one-half interest in the stock of hardware merchandise, consisting principally of hardware, cutlery, firearms, nails, stoves, woodenware, implements, farm machinery," etc. The *situs* of the stock of hardware mentioned in the mortgage is stated, and it is provided in the instrument that, in the event Johnson, the mortgagor, paid the debt secured, etc., then the conveyance was to be void, and it was further provided therein that he was to re-

tain possession of the property until the maturity of the indebtedness, etc. On the same day that Johnson executed this mortgage, his co-partner, Jett, also executed similar mortgages upon his undivided one-half interest in this stock of hardware to secure an antecedent indebtedness of his own.

Appellee, as assignee, presented a petition to the lower court for the purpose of obtaining an order for the sale of the partnership property assigned to him by this firm, the proceeds of such sale to be applied first in the payment of the debts of the late firm of Jett & Johnson. Appellants, together with the mortgagees, under the mortgages executed by Jett, were, on their own application, made parties defendant to this petition and each separately filed cross-complaints setting up his respective chattel mortgage, and asking that in the event the property was sold by the assignee under the court's order, he be directed first to apply *pro rata* the proceeds arising out of the sale upon the indebtedness secured by the mortgages held by the cross-complainants, etc.

On the issues joined upon the pleading, the court, upon hearing the petition and the matters in issue, ordered that the property be sold by the assignee, including that embraced in the mortgages, free from all liens, and that the proceeds arising out of the sale be applied as follows: First, to the payment of the costs and expenses of the assignment; next, to the payment in full of the claims and debts of the firm of Jett & Johnson; and that the remainder of such proceeds be applied one-half thereof *pro rata* to the indebtedness secured under appellants' mortgages, etc.

Appellants each moved for a modification of the judgment to the effect that the court order that one-half of the proceeds accruing from the sale of the property be applied first to the payment of the expenses of the assignment, and that the remainder of said one-half be applied to the payment in full of the claims held by appellants against George W. Johnson, and secured by the mortgages in question; and, if any portion of the undivided half of such proceeds remained after the

payment in full of these individual claims, that it be applied upon the indebtedness of the firm of Jett & Johnson.    These motions were each overruled, as were likewise the motions for a new trial, filed upon the part of appellants.    The firm creditors of Jett & Johnson, upon application to this court, have been permitted to intervene in this appeal, and they, through their counsel, join the assignee in resisting a reversal of the judgment of the lower court.

The contention of the learned counsel for appellants is that the chattel mortgages in controversy are shown to have been executed to appellants by George W. Johnson, of the firm of Jett & Johnson, prior to the assignment, with the consent of Jett, his co-partner.    Therefore the insistence is that they must be considered and held to be a lien upon the undivided one-half of the property held by that firm, and consequently that appellants thereby are preferred over the partnership creditors.    On the other side it is insisted by the learned counsel for the appellees and the interveners that under the circumstances in this case the mortgages in question must be limited, and considered only as embracing the interest of Johnson in the firm property remaining after the payment of the firm debts and the settlement of the partnership accounts; hence, the application of the proceeds arising out of the sale of the property, as directed to be applied by the court, was proper.

It is contended that there is nothing in either of the mortgages in dispute to indicate that they were intended to cover the *corpus* of the firm property.    Counsel say: "Each of the mortgages is executed by George W. Johnson in his individual capacity, and neither attempts in any way, upon its face, to be a mortgage by the firm upon firm property, or a mortgage by the individual member of the firm, with the consent of his co-partner, upon the *corpus* of the firm property."    While in fact a partnership is composed of individual members, still a firm so constituted is recognized as a distinct legal entity different and distinct from the persons who com-

pose it.   *Henry* v. *Anderson*, 77 Ind. 361.   Therefore, the principle is universally recognized that a partner's interest in or title to the firm property is not an interest in or title to any specific property.    The effects or property of the partnership belong to the firm so long as it exists, and not to the members who compose it.    The share or interest of each of its members is the ultimate balance of the firm's property or effects after the payment in full of its debts and obligations and the adjustment or settlement of accounts between him and his co-partners.    *Conant* v. *Frary*, 49 Ind. 530; *Meridian Nat. Bank* v. *Brandt*, 51 Ind. 56, and cases there cited; *Donellan* v. *Hardy*, 57 Ind. 393; *McMillan* v. *Hadley*, 78 Ind. 590; *Ex Parte Hopkins, Assn.*, 104 Ind. 157; *Williams* v. *Lewis*, 115 Ind. 45; *Menagh* v. *Whitewell*, 52 N. Y. 146; Parsons on Part., sections 245 and 247; Bates on Part., section 180.

There is another well recognized governing rule pertaining to the law of partnership, which is to the effect that the property of the firm is impressed with an equity for the payment of the firm debts and liabilities, and the latter are given priority over the debts and liabilities of the individual members of the partnership.   The authorities, in referring to this equity, sometimes in a general way term it the lien of the firm creditors upon the partnership assets or property.   This is a misnomer, as the creditors of the firm, in the true sense of the word, have no lien upon the firm property but have merely an equitable preference or right which a court of equity will enforce in their favor.   *Warren* v. *Farmer*, 100 Ind. 593; *Trentman* v. *Swartzell*, 85 Ind. 443; *Fisher* v. *Syfers*, 109 Ind. 514; *Johnson, Rec.*, v. *McClary*, 131 Ind. 105; Parsons on Part., section 246; Bates on Part., section 559 *et seq.* This equitable right or priority exists in favor of the firm creditors only through the right of the partners to have the assets or property of the partnership first applied to the payment of the firm debts in preference to the debts of the indi-

vidual members composing the firm. Consequently it is recognized and held that the members of the firm may in good faith, by their united action, waive this right by transferring or encumbering the firm property to pay or secure *bona fide* debts of its individual members, for which the firm was in no manner liable or responsible, and thereby deprive the firm creditors of their equitable rights. *Johnson* v. *McClary, supra,* and cases there cited. There can bo no question as to the right of the co-partners of a firm unitedly to dispose of the *corpus* of its property for any purpose when not insolvent, or when enough property is retained to satisfy creditors. While the right of the co-partner to encumber by mortgage his interest in the firm property to secure his own individual antecedent debt cannot be successfully controverted, still the lien of such a mortgage, the authorities affirm, does not attach in any manner to the *corpus* of the partnership property, but only to the mortgaging partner's interest in the surplus remaining after the payment of the firm debts and a balancing of accounts between him and the other member or members of the firm. *Deeter* v. *Sellers,* 102 Ind. 458, and authorities above cited. Certainly the mortgagee, the creditor of the individual partner, as a general rule, cannot be said to occupy a better position than the partner himself through whom he derives his rights under the mortgage. This doctrine is well recognized by the authorities heretofore cited.

In the light of the principles asserted, we may proceed to consider their application to the questions involved in this appeal.

The firm of Jett & Johnson, as heretofore stated, was composed of William S. Jett and George W. Johnson as equal partners, the latter being the mortgagor under whom appellants claim. It is evident, under the circumstances, when tested by the rule previously asserted, that the only interest that George W. Johnson had in the stock of hardware which he could individually mortgage to secure his own indebtedness was one-half of the surplus remaining after the payment

of the firm indebtedness and an adjustment or settlement of the partnership matters or accounts between him and his co-partner, Jett. But counsel for appellants contend that the lien of these mortgages attached to the *corpus* of the partnership property by virtue of an agreement between Johnson and his co-partner. There is evidence showing that on the day the mortgages in question were executed, and previous to their execution, Johnson informed his co-partner, Jett, that he was about to make mortgages to appellants on his (Johnson's) one-half of the partnership stock, and that Jett said: "That is all right. You are willing for me to make mortgages to my brothers to secure them for some notes they are on for me." This consent of Johnson's partner, under the circumstances, can not be accepted as controlling. The mortgages, as we have seen, were each executed by Johnson in his individual capacity and they each expressly purport to embrace only his undivided one-half interest in this stock of hardware. Neither of these instruments professes or indicates that the execution thereof is in any manner the united action of the members of the firm of Jett & Johnson, or that the mortgagor contemplates or intends to mortgage or affect in any manner the *corpus* of the property mentioned. It is the undivided one-half interest, declared to be covered by the mortgage, which, in legal effect, as we have seen, is one-half of the surplus of the firm property remaining after the payment of the partnership debts and the settlement of accounts between the mortgagor and his co-partner. In fact, appellants, by their cross-complaint, seemingly themselves place the proper construction upon these mortgages, as it is therein alleged that Jett consented to the execution of the mortgage by "George W. Johnson upon the undivided one-half of said Johnson in the property heretofore described."

In the case of *Conant* v. *Frary*, 49 Ind. 530, the mortgage there involved on its face purported to be upon the undivided one-half interest of the real estate therein described, which

was shown to be partnership property. 'The lower court limited the mortgage lien to the one-half interest of the partner in the surplus after the payment of the firm debts and the settlement of the partnership accounts, and this construction of the mortgage was sustained by this court.

In the appeal of *Menagh* v. *Whitwell*, 52 N. Y. 146, the court of appeals of New York said: "Until some act is done by the firm to transfer the joint interest, no separate act of either or all of the partners, or proceedings against them individually with reference to their individual interests, should be held to affect the title of the firm so as to preclude a creditor of the firm, having a judgment and execution, from levying upon the joint property. To hold that separate transfers of their individual shares by the several partners can convey a good title to the whole property, free from the joint debts, would be to return to the doctrine, long since exploded that partners hold by moieties as tenants in common. * * * But the individual members or their creditors ought not to have any such power, and all transfers made by them for individual purposes should be held inoperative upon the *corpus* of the property, so long as there are firm debts unpaid for which the property is required. As against firm creditors, no greater effect should be given to such transfers when made by all the partners separately, than when made by a portion of them, but the property should be deemed to continue in the firm until its title has been devested by some act of the firm."

The mortgages in the case at bar neither were, nor did they purport upon their face to be, the act of the firm by virtue either of any express or implied consent of Jett, the co-partner. The interest which Johnson attempted to mortgage was his undivided one-half, and nothing more; hence the alleged consent of his co-partner, under the circumstances, cannot avail to render them operative upon the *corpus* of the firm property so long as there are partnership claims which demand its application to their payment. *Ewart* v. *Nave-*

Thompson *v.* Citizens Street R. Co.

*McCord, etc., Co.,* 130 Mo. 112, 31 S. W. 1041; *Reyburn* v. *Mitchell,* 106 Mo. 365, 16 S. W. 592; *Still* v. *Focke,* 66 Texas 715, 2 S. W. 59.

In *Reyburn* v. *Mitchell, supra,* the mortgage was executed by a member of the firm to secure an individual debt, and purported to be upon "his right, title, and interest in the property." The court construed this to include nothing more than the interest of the partner in the surplus remaining after the payment of the firm debts and an adjustment of the partnership matters.

In *Still* v. *Focke, supra,* it was held that if the instrument of conveyance or assignment is by one of the partners only, in his name, he assuming therein to be the sole owner of the property, only his interest will pass to the assignee, and the property may be seized by a firm creditor in payment of his debt.

The judgment of the lower court directing the application of the proceeds arising out of the sale of the property in controversy, is amply supported by the evidence, and is in harmony with the law, and is therefore affirmed.